1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6 SAN JOSE DIVISION

7

8 SIONE FUAPAU, et al.,                    Case No.  20-cv-04404-VKD

Plaintiffs,

9

10 v.                                      **ORDER DENYING WITHOUT PREJUDICE MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

11 LHOIST NORTH AMERICA OF ARIZONA, INC.,

12 Defendant.                              Re: Dkt. No. 51

13

14    Plaintiffs Sione Fuapau, Alfredo Godinez, Gabriel Mendoza, Manuel Vaca, Michael Nau,

15 Antonio Guzman, Jesus Guerrero, Ivan Pacheco, and Miguel Reyes, Jr. filed this state law wage-

16 and-hour action on behalf of themselves and others similarly situated against their employer,

17 defendant Lhoist North America of Arizona, Inc. ("Lhoist").  Dkt. No. 43.  Plaintiffs allege that

18 Lhoist violated California state labor laws.  Now before the Court is plaintiffs' unopposed motion

19 for preliminary approval of the parties' class and representative action settlement agreement.  Dkt.

20 No. 51.

21    The Court heard oral argument on plaintiffs' motion on March 1, 2022.  Dkt. No. 55.

22 Upon consideration of the moving papers and the arguments made at the hearing, the Court denies

23 the motion for preliminary approval of the class and representative action settlement, without

24 prejudice.[1]

25

26

27 _____

[1] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge.  Dkt. Nos. 11, 12; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  The consent of absent class members is not required for this Court to exercise jurisdiction over this matter.  *Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1076 (9th Cir. 2017).

28

United States District Court
Northern District of California

## I.     BACKGROUND

Plaintiffs, who are all residents of Monterey County, California, are present and former non-exempt employees of defendant Lhoist.  Dkt. No. 43 ¶¶ 1–9.  Lhoist is an Arizona corporation that operates a mineral products business with its headquarters in Fort Worth, Texas.  Dkt. No. 1 ¶ 18; Dkt. No. 1-2 ¶¶ 4–5; Dkt. No. 43 ¶ 18; Dkt. No. 45 ¶ 18.  Lhoist employs or employed plaintiffs at Lhoist's "Natividad Plant" in Salinas, California.  Dkt. No. 43 ¶ 22; Dkt. No. 45 ¶ 22.  The Natividad Plant is a mineral mining and quarrying operation that runs continuous machinery 24 hours a day, six to seven days a week.  Dkt. No. 43 ¶ 22.

Plaintiffs allege that during their employment, Lhoist intentionally failed to pay its employees the full wages owed for overtime hours worked, nondiscretionary safety bonuses earned, and contractually promised shift premiums.  *Id.* ¶ 32.  They say that Lhoist regularly required employees to work, without overtime pay, more than eight hours in a single workday and more than 40 hours in a workweek.  *Id.* ¶ 36.  Plaintiffs further allege that employees never received off-duty meal periods, even though Lhoist automatically deducted 30 minutes of pay per day from each employee to account for meal periods.  *Id.*  Specifically, plaintiffs allege that Lhoist maintained and enforced a uniform policy of requiring its employees to work shifts of five hours or more within a single workday without a 30-minute uninterrupted duty-free meal period, and that Lhoist did not compensate employees for each meal period not provided.  *Id.* ¶ 34.  Plaintiffs also allege that Lhoist maintained and enforced a uniform policy of failing to provide its employees with paid duty-free rest periods of at least 10 consecutive uninterrupted minutes for every four hours worked, and that Lhoist failed to compensate them for each rest period not provided.  *Id.* ¶ 35.  Plaintiffs further allege that Lhoist regularly failed to provide complete and accurate itemized wage statements, to record all deductions from wages, or to keep accurate information with respect to each employee.  *Id.* ¶ 37.  Finally, plaintiffs allege that Lhoist maintained and enforced a uniform policy requiring its employees to use their personal cell phones to communicate with Lhoist during non-working hours, and that Lhoist failed to reimburse such work-related expenses.  *Id.* ¶ 39.

On February 26, 2021, the parties participated in a private mediation session.  Dkt. No. 37

2

at 2.  The matter did not resolve and the parties continued to conduct discovery.  *Id.*  On June 7, 2021, plaintiffs filed a motion to certify a class with respect to their claim for failure to comply with itemized employee wage statement requirements, which Lhoist opposed.  Dkt. Nos. 26, 31, 33.  On September 1, 2021, three weeks before the hearing on plaintiffs' motion to certify the class, the parties participated in a second mediation session.  Dkt. No. 37 at 2.  Although the matter did not immediately resolve, the parties eventually accepted the mediator's proposal.  *Id.*

The terms of the settlement agreement are memorialized in the parties' Joint Stipulation of Class and Representative Action Settlement ("the Settlement Agreement").  Dkt. No. 51-1, Ex. A.  As contemplated by the settlement agreement, plaintiffs filed a second amended complaint on October 20, 2021.  Dkt. No. 51-1, Ex. A ¶¶ 18, 23.  The operative complaint asserts claims for: (1) failure to provide meal periods in violation of California Labor Code §§ 226.7 and 1198, and IWC Wage Order No. 16-2001 ("the Wage Order"); (2) failure to provide rest periods in violation of California Labor Code §§ 226.7 and 1198, and the Wage Order; (3) failure to pay hourly and overtime wages in violation of California Labor Code §§ 1194 and 1198, and the Wage Order; (4) failure to comply with itemized wage statement and records requirements in violation of California Labor Code §§ 226, 1174, and 1175, and the Wage Order; (5) failure to pay agreed wages in violation of California Labor Code §§ 204, 216, 218, 221, 223, 1194, and 1198, and the Wage Order; (6) failure to pay wages in a timely manner in violation of California Labor Code § 204; (7) failure to reimburse work-related expenses in violation of California Labor Code § 2802, and the Wage Order; (8) violation of California Labor Code §§ 2698, *et seq.*, the Private Attorneys General Act ("PAGA") (brought by plaintiffs Sione Fuapau, Alfredo Godinez, Gabriel Mendoza, and Manuel Vaca against Lhoist); (9) unfair business practices in violation of California Business and Professions Code § 17200, *et seq.*; (10) retaliation in violation of California Labor Code §§ 98.6 and 112.5 (brought by plaintiff Gabriel Mendoza against Lhoist); and (11) wrongful discharge in violation of public policy (brought by plaintiff Gabriel Mendoza against Lhoist).

## II.   PROPOSED SETTLEMENT

### A.   Proposed Class

The Settlement Agreement defines the proposed class as "all current and former non-

exempt employees of Defendant who worked in the State of California at any time during the Class Period." Dkt. No. 51-1, Ex. A ¶ 7. "Class Period" is defined as the period "from October 20, 2017 through November 15, 2021." *Id.*, Ex. A ¶ 8. According to the Settlement Agreement, Lhoist represents that there were 115 putative class members as of September 1, 2021. *Id.*, Ex. A ¶ 7.

### 1.     Payment Terms

The Settlement Agreement provides that Lhoist will pay $320,000.00 ("gross settlement amount") in full satisfaction of all class and representative action claims. Dkt. No. 51-1, Ex. A ¶ 9. The gross settlement amount includes: (1) individual payments to class members; (2) payments for attorneys' fees and costs awarded to class counsel, not to exceed $106,666.67 for fees and $25,000 for costs; (3) claims administration costs, estimated to be $6,250; and (4) a payment to resolve any and all claims of class members and the State of California arising under PAGA, 75% of which shall be paid to the LWDA, and 25% of which shall be distributed to the class members. Dkt. No. 51-1, Ex. A ¶¶ 3, 5, 9, 14. The net settlement amount for individual class settlement payments after deducting attorneys' fees and costs, claims administration costs, and the payment to resolve PAGA claims is estimated to be $167,083.33. Dkt. No. 51-1 ¶ 16. Any unclaimed portion of the settlement funds will be distributed to the Watsonville Law Center as a designated cy pres recipient. Dkt. No. 51-1, Ex. A ¶ 50.

The individual class settlement payments to class members who do not opt out will be calculated based on the number of pay periods the class member worked during the class period. Dkt. No. 51-1, Ex. A ¶ 34. All individual class settlement payments will be allocated with the following proportions: 80% to (non-PAGA) statutory penalties and interest, and 20% to wages. Dkt. No. 51-1, Ex. A ¶ 53. The net settlement amount will be divided by the total number of pay periods worked by participating class members (i.e., those who have not requested to be excluded), and each participating class member shall receive a proportional share of the net settlement amount that corresponds to the number of pay periods he or she worked during the class period. Dkt. No. 51-1, Ex. A ¶¶ 20, 34.

### 2.   Release

The Settlement Agreement provides that all members of the class who do not submit valid requests for exclusion shall be deemed to have released any and all of the Released Parties of and from any and all Released Claims.  Dkt. No. 51-1, Ex. A ¶ 58.  The Settlement Agreement defines "Released Claims" as "any and all claims, rights, demands, liabilities, and causes of action based on the same set of operative facts as those set forth in the operative Second Amended Complaint, including but not limited to claims based on the following categories of allegations: All claims for violation of Labor Code §§ 201, 202, 2023, 204, 216, 218, 218.5, 218.6, 221, 223, 226, 226.3, 226.7, 510, 512, 558, 1174, 1175, 1194, 1198, 1199, 2800, and 2802, and Business and Professions Code § 17200, *et seq.*, and all applicable IWC Wage Orders for failure to provide proper meal and rest breaks and/or pay meal and rest period premiums at the regular rate of pay, pay all overtime wages owed, pay all agreed wages and minimum wage, furnish accurate wage statements, reimburse business expenses, pay all wages in a timely manner and upon separation of employment, and unfair business practices."  Dkt. No. 51-1, Ex. A ¶ 23.  The Settlement Agreement defines "Released Parties" as "Defendant, and any of its former and present parents, subsidiaries, affiliates, divisions, corporations in common control, predecessors, successors, and assigns, as well as all past and present officers, directors, employees, partners, shareholders and agents, attorneys, insurers, and any other successors, assigns, or legal representatives."  Dkt. No. 51-1, Ex. A ¶ 24.

Further, the Settlement Agreement provides that upon the effective date and funding of the class settlement amount, all class members and the State of California (including the LWDA) shall be deemed to have released any and all of the Released Parties of and from any and all "PAGA Claims."  Dkt. No. 51-1, Ex. A ¶ 58.  The Settlement Agreement defines "PAGA Claims" as "any and all claims under the PAGA based on the operative facts set forth in the operative Second Amended Complaint, including but not limited to alleged violations of Labor Code §§ 201, 202, 203, 204, 216, 218, 218.5, 218.6, 223, 226, 226.3, 226.7, 227.3, 246, 510, 512, 558, 1174, 1175, 1194, 1197, 1197.1, 1198, 1199, 2699, 2800, 2802, that accrued during the Class Period."  Dkt. No. 51-1, Ex. A ¶ 18.

### 3.    Notice

The Settlement Agreement calls for appointment of a claims administrator to administer the settlement, which will include printing, distributing and tracking documents for the settlement; calculating estimated settlement amounts per class member; providing necessary reports and declarations; mailing notices to class members; processing requests for exclusion and objections; tax reporting; establishing and maintaining an interest-bearing settlement fund for the purpose of administering the settlement and disbursing sums from the fund.  Dkt. No. 51-1, Ex. A ¶ 3.  The parties have selected Phoenix Settlement Administrators as the claims administrator.  Dkt. No. 51 at 30; Dkt. No. 51-1, Ex. A ¶ 2.

The Settlement Agreement provides that within 14 calendar days after preliminary approval is granted, Lhoist will give the class administrator the following information for each class member: complete name, most recent known mailing address and telephone number, social security number, dates of employment, and the respective number of pay periods that each class member worked during the class period.  Dkt. No. 51-1, Ex. A ¶¶ 6, 39.  Within 10 days after receiving this information from Lhoist, the claims administrator must mail to all class members a notice packet including information regarding the nature of this action and a summary of the settlement terms.  Dkt. No. 51-1, Ex. A ¶ 42.  The claims administrator must perform a search based on the National Change of Address database to update and correct for any known or identifiable address changes prior to mailing the notice packets.  Dkt. No. 51-1, Ex. A ¶ 41.  If any notice packets are returned to the claims administrator as non-deliverable on or before the response deadline, the claims administrator must use skip-tracing or other search procedures to obtain forwarding addresses and perform a single remailing.  *Id.*

Class members will have until 45 calendar days from the initial mailing of the notice to postmark a valid request for exclusion or a notice of objection.  Dkt. No. 51-1, Ex. A ¶¶ 26, 44, 47.  Any such requests or objections must be signed by the class member.  *Id.*, Ex. A ¶¶ 44, 47.  The initial response deadline to request exclusion will be extended by 15 days for class members who receive a remailed notice packet after a prior unsuccessful mailing.  *Id.*, Ex. A ¶ 26.  The initial response deadline may also be extended by express agreement between class counsel and

1    defendant. *Id.*

2       Any class member who does not affirmatively opt-out of the settlement by submitting a

3    timely and valid request for exclusion shall receive their pro rata share of the net settlement

4    amount based on the number of pay periods they performed work for Lhoist during the class

5    period. *Id.*, Ex. A ¶ 34. Every participating class member (i.e., a class member who did not

6    submit a request for exclusion) will be bound by all terms of the Settlement Agreement, including

7    those pertaining to the Released Claims and PAGA claims. *Id.*, Ex. A ¶ 46.

8    **III.    LEGAL STANDARD**

9       Court approval is required for the settlement of Rule 23 class actions. *See* Fed. R. Civ. P.

10   23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for

11   purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the

12   court's approval."). The Ninth Circuit has declared that a strong judicial policy favors settlement

13   of Rule 23 class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

14   However, no broad presumption of fairness applies to such settlements. *Saucillo v. Peck*, No. 20-

15   55119, No. 20-55159, 2022 WL 414692, at *7–10 (9th Cir. Feb. 11, 2022); *Roes v. SFBSC Mgmt.,*

16   *LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019). And where the parties reach a settlement before class

17   certification, courts must "employ[] extra caution and more rigorous scrutiny," *id.*, and "peruse the

18   proposed compromise to ratify both the propriety of the certification and the fairness of the

19   settlement," *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *see also In re Bluetooth*

20   *Headset Prods. Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ("Prior to formal class

21   certification, there is an even greater potential for a breach of fiduciary duty owed the class during

22   settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for

23   evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)

24   before securing the court's approval as fair.").

25       In considering plaintiffs' motion for preliminary approval, the Court must first assess

26   whether a class exists. *Staton*, 327 F.3d at 952. Second, the Court must assess whether the

27   proposed settlement is "fundamentally fair, adequate, and reasonable," considering "the settlement

28   taken as a whole, rather than the individual component parts, that must be examined." *Id.* (internal

United States District Court
Northern District of California

quotations and citation omitted).

## IV.   DISCUSSION

### A.   Conditional Certification of the Settlement Class

Plaintiffs bear the burden of establishing, by a preponderance of the evidence, that class certification is appropriate under Rule 23.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.") (emphasis in original).  Class certification under Rule 23 proceeds in two steps.  First, plaintiffs must satisfy the four prerequisites under Rule 23(a), namely: numerosity, commonality, typicality, and adequacy of representation.  *Id.* at 349.  Additionally, plaintiffs must also show that at least one of the bases for certification under Rule 23(b) is met.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Here, plaintiffs seek certification under Rule 23(b)(3) and therefore must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

#### 1.   Rule 23(a) certification

##### a.   Numerosity

Under Rule 23(a), the class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  While there is no fixed number for this requirement, courts generally find that numerosity is satisfied for classes consisting of 40 or more members.  *In re Facebook, Inc. PPC Advertising Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012).  Here, the numerosity requirement is met as there are approximately 115 class members.  Dkt. No. 51 at 17; Dkt. No. 51-1, Ex. A ¶ 7.

##### b.   Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  A question of fact is common where "it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of

8

each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.  However, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (citation omitted).  "All questions of fact and law need not be common to satisfy the commonality requirement.  The existence of shared legal issues with divergent factual predicates is sufficient." *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 807 (9th Cir. 2020) (quotation marks, citation, and brackets omitted); *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 321 (N.D. Cal. 2013) (concluding that the commonality requirement was satisfied where plaintiffs contended that all non-exempt employees were subject to the same wage and hour policies and practices).  A single common question of fact or law is sufficient to satisfy Rule 23(a)(2). *Dukes*, 564 U.S. at 359.

Here, plaintiffs allege that all class members were subject to the same uniform wage-and-hour policies and practices, *see* Dkt. No. 43 ¶¶ 34–40, and that resolution of the class claims depends on common questions of law and fact about the class members' employment with Lhoist, including: (1) whether Lhoist failed to provide meal periods or to compensate plaintiffs for missed meal periods; (2) whether Lhoist failed to provide rest periods or to compensate plaintiffs for missed rest periods; (3) whether Lhoist failed to provide premium overtime wages for overtime hours worked by plaintiffs; (4) whether Lhoist failed to provide plaintiffs with complete and accurate wage statements; (5) whether Lhoist failed to provide plaintiffs with agreed-upon wages, such as the minimum wage; (6) whether Lhoist failed to provide timely payment of all wages; (7) whether Lhoist failed to provide timely payment of all wages upon termination of plaintiffs' employment; (8) whether Lhoist failed to reimburse plaintiffs for all business-related expenses incurred during the course and scope of their employment.  Dkt. No. 43 ¶ 48; Dkt. No. 51 at 18–19.

Accordingly, the allegations of the operative complaint support plaintiffs' position that the commonality requirement is met.

### c.   Typicality

Rule 23(a) requires that "the claims or defenses of the representative parties are typical of

9

the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class," and the "test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.*" Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotations and citations omitted).

Here, plaintiffs' claims appear to meet the typicality requirement because the named plaintiffs, like every other class member, worked for Lhoist as non-exempt employees and claim that they were subject to the same alleged unlawful wage and hour practices. Dkt. No. 43 ¶ 48; Dkt. No. 51-5 ¶ 3; Dkt. No. 51-6 ¶ 3; Dkt. No. 51-7 ¶ 3; Dkt. No. 51-8 ¶ 3; Dkt. No. 51-9 ¶ 3; Dkt. No. 51-10 ¶ 3; Dkt. No. 51-11 ¶ 3; Dkt. No. 51-12 ¶ 3; Dkt. No. 52 ¶ 3; *Tijero*, 301 F.R.D. at 322 (concluding that the typicality requirement was met where plaintiffs sought to represent all non-exempt employees that were not properly compensated due to defendant's policies and practices). The Court notes that plaintiff Gabriel Mendoza also brings two individual claims for retaliation and wrongful discharge against Lhoist. Dkt. No. 43 ¶¶ 135–153. The parties advise that these claims are the subject of a separate settlement agreement that is not before the Court. However, the Court understands that these two individual claims are in addition to the class claims, and that as to the class claims Mr. Mendoza's injury is the same as the injury suffered by other class members.

Accordingly, the typicality requirement is satisfied.

### d.      Adequacy of Representation

Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In assessing this factor, the Court addresses two questions: (1) whether plaintiffs and their counsel have any conflicts of interest with other class members, and (2) whether plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Staton*, 327 F.3d at 957.

As to the first factor, all but one of the named plaintiffs appear to have interests that are aligned with those of the purported class. Plaintiffs share the same grievances as the class and

United States District Court
Northern District of California

10

United States District Court
Northern District of California

have the same interests as the absent class members in obtaining redress from defendant as to those claims. The Settlement Agreement does not provide for incentive awards for any of the named plaintiffs. *See* Dkt. No. 51-1, Ex. A. However, as noted above, plaintiff Gabriel Mendoza also brings two individual claims for retaliation and wrongful discharge against Lhoist, and the Court has been informed that he and Lhoist have separately settled these individual claims. Dkt. No. 55. The parties have not provided any information regarding this separate settlement.

While the existence and resolution of Mr. Mendoza's individual claims does not necessarily mean that Mr. Mendoza is an inadequate representative, the parties have not provided any information that would permit the Court to evaluate whether separate resolution of his individual claims might create a conflict of interest between him and the class. *See Wuest v. My Pillow, Inc.*, No. 18-03658 WHA, 2019 WL 3577176, at *4 (N.D. Cal. Aug. 6, 2019) (discussing the additional leverage named plaintiffs hold when negotiating for settlements of their individual claims); *but see Krzesniak v. Cendant Corp.*, No. C 05-05156 MEJ, 2007 WL 1795703, at *9–12 (N.D. Cal. Jun. 20, 2007) (granting class certification where class representative also pled individual claims).

As to the second factor, no issues have been raised with respect to plaintiffs' counsel's competence, and each aver that they have been practicing attorneys for at least 9 years, with considerable experience litigating employment and wage-and-hour matters. Dkt. No. 51 ¶¶ 24, 28–29; Dkt. No. 51-2 ¶¶ 3–11; Dkt. No. 51-3 ¶ 5; Dkt. No. 51-4 ¶ 6. Plaintiffs' counsel say that they conducted an extensive investigation of the facts surrounding the claims in this action, including propounding and responding to written discovery, deposing Lhoist's Rule 30(b)(6) witness regarding payroll policies and procedures, reviewing wage statements and time and payroll records produced by Lhoist throughout the course of litigation and in connection with mediation; and conducting an exposure analysis. Dkt. No. 51-1 ¶¶ 6, 8, 10. In addition, plaintiffs' counsel say that they have engaged in rigorous advocacy on behalf of the class, including moving for class certification on one issue and representing the interests of the class in two mediation sessions. Dkt. No. 51-1 ¶¶ 11, 13. However, for the reasons noted above, the Court is unable to determine whether Mr. Mendoza has adequately represented the interests of the class or whether

1    he has prioritized his own interests in his individual claims above those of the class.

2         For these reasons, the Court concludes that plaintiffs have shown that all named plaintiffs

3    other than Mr. Mendoza meet the adequacy requirement.

### 2.    Rule 23(b)(3) certification

#### a.    Predominance

6         Plaintiffs ask the Court to certify the proposed class under Rule 23(b)(3), which requires

7    that "the questions of law or fact common to class members predominate over any questions

8    affecting only individual members" and "that a class action is superior to other available methods

9    for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Based on its

10   review of the record, the Court concludes that the predominance and superiority requirements are

11   met.

12        The "predominance inquiry tests whether the proposed classes are sufficiently cohesive to

13   warrant adjudication by representation," and "asks whether the common, aggregation-enabling,

14   issues in the case are more prevalent or important than the non-common, aggregation-defeating,

15   individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal

16   quotations and citations omitted).

17        In the present case, plaintiffs have satisfied the predominance inquiry because the central

18   issues in the action concern Lhoist's allegedly unlawful wage and hour policies, which apply to all

19   class members. Although Mr. Mendoza also brings individual claims for retaliation and wrongful

20   discharge, he asserts these claims in addition to the claims he shares in common with other class

21   members. "When one or more of the central issues in the action are common to the class and can

22   be said to predominate, the action may be considered proper under Rule 23(b)(3) even though

23   other important matters will have to be tried separately, such as damages or some affirmative

24   defenses peculiar to some individual class members." *Id.* (internal quotations and citations

25   omitted).

#### b.    Superiority

27        In determining whether "a class action is superior to other available methods for fairly and

28   efficiently adjudicating the controversy," courts consider four nonexclusive factors: (1) the class

United States District Court
Northern District of California

members' interest in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the controversy in the particular forum; and (4) the difficulties likely to be encountered in managing a class action.  Fed. R. Civ. P. 23(b)(3).

Plaintiffs have met the superiority requirement.  The record presented indicates that the damages at issue with respect to the class claims are likely not great enough for individual putative class members to want to litigate separate actions against Lhoist, and the Court is unaware of any other litigation already commenced by or against the class.  Permitting the case to proceed as a single class action is an efficient use of the Court's and the parties' resources and the most expeditious way to resolve common questions about Lhoist's alleged wage and hour practices. Further, the present forum is appropriate, and there are no obvious difficulties in managing this case as a class action.

In sum, for purposes of settlement, plaintiffs meet the requirements of Rule 23(b)(3).

### B.    Class Representatives and Class Counsel

Because plaintiffs have not demonstrated that all named plaintiffs satisfy the requirements of Rule 23(a) requirements, the Court is not prepared to appoint them all as class representatives. However, based on the current record, the Court provisionally appoints Sione Fuapau, Alfredo Godinez, Manuel Vaca, Michael Nau, Antonio Guzman, Jesus Guerrero, Ivan Pacheco, and Miguel Reyes, Jr. as class representatives.  The Court declines to appoint Mr. Mendoza as a class representative at this time.

Additionally, when a court certifies a class, it must also appoint class counsel.  Fed. R. Civ. P. 23(c)(1)(B).  In appointing class counsel, the Court considers:

    a.  the work counsel has done in identifying or investigating potential claims in the action;
    b.  counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
    c.  counsel's knowledge of the applicable law; and
    d.  the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).  Here, as described above, plaintiffs' counsel have investigated and

United States District Court
Northern District of California

1    litigated this action and have submitted declarations describing their expertise in representing

2    plaintiffs in class actions in the area of wage and hour violations.  Dkt. Nos. 51-1, 51-3, 51-4.

3    Nothing in the record suggests that counsel have not and will not continue to vigorously litigate

4    this action.  Accordingly, the Court provisionally appoints Max Gavron, Larry W. Lee, B. James

5    Fitzpatrick, and Laura L. Franklin as class counsel for settlement purposes only.

6          **C.        Preliminary Approval of the Settlement**

7          Rule 23(e) requires court approval of a proposed settlement of a class action.  Fed. R. Civ.

8    P. 23(e).  The approval process proceeds in two steps.  *Lusby v. Gamestop, Inc.*, 297 F.R.D. 400,

9    412 (N.D. Cal. 2013).  First, the Court conducts a preliminary fairness evaluation.  If the Court

10   preliminarily approves the settlement, then notice to the class is disseminated and the Court sets a

11   final hearing for approval of the settlement.  *Id.*  Ultimately, a settlement should only be approved

12   if it is "fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(2).  In determining whether a

13   proposed settlement meets this standard, the Court does not have "the ability to delete, modify, or

14   substitute certain provisions," and "[t]he settlement must stand or fall in its entirety."  *Staton*, 327

15   F.3d at 969 (citation omitted).

16         The Ninth Circuit has described several factors a court may consider in evaluating the

17   fairness of a proposed settlement:

18             [1] the strength of the plaintiffs' case; [2] the risk, expense,
               complexity, and likely duration of further litigation; [3] the risk of
19             maintaining class action status throughout trial; [4] the amount
               offered in settlement; [5] the extent of discovery completed and the
20             stage of the proceedings; [6] the experience and views of counsel; [7]
               the presence of a governmental participant; and [8] the reaction of the
21             class members to the proposed settlement.

22   *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (quoting *Hanlon*, 150 F.3d

23   1011).  Rule 23(e)(2) requires a court to consider a similar list of factors before approving a

24   settlement, including whether:

25             (A) the class representatives and class counsel have adequately
                   represented the class;
26             (B) the proposal was negotiated at arm's length;
               (C) the relief provided for the class is adequate, taking into account:
27             the costs, risks,
                   (i)   the costs, risks, and delay of trial and appeal;
28                 (ii)  the effectiveness of any proposed method of distributing

United States District Court
Northern District of California

> relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).  This list of factors is not intended to displace any factors currently considered by courts, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  Fed. R. Civ. P. 23(e) advisory committee note to 2018 amendment.[2]

The Court's evaluation of a settlement reached prior to class certification "requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks omitted).  Additionally, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  *In re Bluetooth*, 654 F.3d at 947.  Such signs include (1) class counsel's receipt of a disproportionate distribution of the settlement, (2) a "clear sailing" agreement "providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and (3) an arrangement whereby fees that are not awarded are reverted to the defendants, rather than added to the class fund.  *Id.*

As relevant to this case, the Court considers the following factors: (1) strength of the plaintiffs' case and risks of further litigation; (2) amount of the settlement; (3) extent of the discovery completed and stage of proceedings; (4) adequacy of the class notice and plan for distribution; (5) proposed attorneys' fee award and preferential treatment; and (6) adequacy of representation and absence of collusion.

---

[2] The Ninth Circuit has not specifically addressed the effect, if any, of the 2018 amendments to Rule 23(e)(2) on a district court's analysis of a proposed settlement at the preliminary approval stage.  *See Campbell*, 951 F.3d at 1121 n.10; *Saucillo*, 2022 WL 414692, at *3 n.3.

United States District Court
Northern District of California

As an initial matter, the Court observes that in *SFBSC Mgmt., LLC*, 944 F.3d at 1049, the Ninth Circuit specifically critiqued the presumption that plaintiffs rely upon to argue that the proposed settlement is fair and reasonable. *See* Dkt. No. 51 at 20–22. Even where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, "a presumption of fairness is not supported by [Ninth Circuit] precedent." *SFBSC Mgmt.*, 944 F.3d at 1049. Rather, particularly in light of the standards codified in Rule 23(e)(2), the courts must "employ[] extra caution and more rigorous scrutiny" "when it comes to settlements negotiated prior to class certification." *Id.* (concluding that district court abused its discretion by failing to "conduct the searching inquiry required"). Accordingly, the Court now applies this rigorous scrutiny. For the reasons described below, the Court cannot conclude on this record that the proposed settlement is fair, adequate, and reasonable.

### 2.    Strength of plaintiffs' case and risks of further litigation

Plaintiffs do not provide much evaluation of the strength of their case beyond the statement that "Plaintiffs' attorneys believe the claims are meritorious." Dkt. No. 51 at 24. Further, although plaintiffs explain that "the outcome of a trial, and the outcome of any appeals that would inevitably follow if the class prevailed at trial, are inherently uncertain in terms of both outcome and duration," plaintiffs do not adequately explain the risks of litigation specific to this case. Dkt. No. 51 at 24. It is not sufficient to simply observe that the outcome of any litigation is uncertain.

Equally unhelpful is plaintiffs' citation to other cases involving PAGA claims. *See* Dkt. No. 51 at 24-26 (citing *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 529 (2018) and *Magadia v. Wal-Mart Assocs., Inc.*, 384 F.Supp.3d 1058, 1103–1104 (N.D. Cal. 2019), *rev'd on other grounds*, 999 F.3d 668, 677 (9th Cir. 2021)). While both cases discuss substantial reductions in PAGA penalties, plaintiffs do not address whether the circumstances of those cases are similar to the circumstances presented here. If they are not similar, then it is unclear how these cases inform the Court's assessment of the strengths and weakness of plaintiffs' claims.

In addition, the Court notes that Lhoist's answer asserts an affirmative defense of "waiver and release," stating that "[s]ome of the claims of the putative class members and/or allegedly aggrieved employees which Plaintiffs purports [sic] to represent are barred, in whole or in part, by

16

prior waiver and/or release agreement." Dkt. No. 45 at 22.  Plaintiffs do not comment on the merits of this potential defense or provide the Court with any information that would permit the Court to assess whether it might impact the strength of plaintiffs' claims.

This factor weighs against preliminary approval of the settlement.

### 3.    Amount offered in settlement

In addition to the concerns noted above regarding the strength of plaintiffs' claims, the Court does not have enough information to ascertain whether the amount of the settlement is fair, adequate, and reasonable.  When considering the fairness and adequacy of the amount offered in settlement, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Id.* at 256 (citation omitted).  "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal citation and quotation marks omitted).

Here, plaintiffs estimate (and Lhoist does not dispute) that Lhoist's potential exposure across all claims is $2,747,406.80.  Dkt. No. 51 at 23.  Apparently, this estimated exposure includes claims that are possibly barred by prior waivers and/or release agreements.  Dkt. No. 45 at 22.  The gross settlement amount ($320,000) represents 11.65% of the potential recovery and the net settlement amount ($167,083.33) represents 6.08% of the potential recovery.  Plaintiffs point to instances where courts have granted preliminary approval in cases where the settlement amount represents a similar percentage of the estimated potential recovery.  *See, e.g.*, *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 171–72 (N.D. Cal. 2020) (preliminarily approving settlement where net settlement amount reflected a 13% recovery of potential damages); *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (preliminarily approving settlement where gross settlement amount reflected approximately 15% of the potential recovery where plaintiff's counsel acknowledged that some of plaintiff's claims were not as viable as originally envisioned); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (where gross settlement amount that was 16.7% of potential

recovery was fair and reasonable given uncertainties of trial and difficulties proving scienter).
However, in these other cases, the parties discussed and analyzed the specific factors bearing on
likely exposure and risks impacting possible recovery and how those considerations informed the
proposed settlement amount. *See, e.g., Uschold*, 333 F.R.D. at 172. Here, plaintiffs have not
provided an adequate discussion of the considerations that inform the proposed settlement amount,
and the mere existence of orders approving settlement amounts that represent a similar percentage
of the potential recovery is not helpful or persuasive.

   This factor weighs against preliminary approval of the settlement.

### 4.    Extent of discovery completed and the stage of the proceedings

   In the context of class action settlements, as long as the parties have sufficient information
to make an informed decision about settlement, "formal discovery is not a necessary ticket to the
bargaining table." *Linney*, 151 F.3d 1234, 1239 (9th Cir. 1998). Rather, the Court's focus is on
whether "the parties carefully investigated the claims before reaching a resolution." *Ontiveros v.
Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) (citation omitted).

   Here, plaintiffs represent that they conducted substantial discovery in support of their
claims, their motion for class certification, and their positions in mediation. Dkt. No. 51-1 ¶ 6.
Plaintiffs also say that they analyzed Lhoist's production of documents, which included payroll
policies and procedures, wage statements, and a sampling of time and payroll records, to produce
an exposure analysis. Dkt. No. 51 at 22–23; Dkt. No. 51-1 ¶¶ 6, 8. The parties participated in two
mediation sessions with a respected mediator. Dkt. No. 51 at 11; Dkt. No. 51-1 ¶¶ 11–13. These
efforts suggest that the parties did indeed conduct a careful investigation of plaintiffs' claims
before reaching a resolution. *See Bellinghausen v. Tractor Supply Company*, 306 F.R.D. 245, 257
(N.D. Cal. 2015) (citing *Ontiveros*, 303 F.R.D. at 371).

   This factor weighs in favor of preliminary approval of the settlement.

### 5.    Adequacy of notice and plan for distribution

   Rule 23(c)(2)(B) provides that for any class certified under Rule 23(b)(3), the Court must
direct to class members the best notice that is practicable under the circumstances, including
individual notice to all members who can be identified through reasonable effort. Specifically,

1  "[t]he notice must clearly and concisely state in plain, easily understood language: (i) the nature of

2  the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv)

3  that a class member may enter an appearance through an attorney if the member so desires; (v)

4  that the court will exclude from the class any member who requests exclusion; (vi) the time and

5  manner for requesting exclusion; and (vii) the binding effect of a class judgment under Rule

6  23(c)(3)."

7        Here, the proposed class notice describes the nature of the action, the definition of the

8  class, and the class-wide claims.  Dkt. No. 51-1 at 40–41.  The proposed notice further explains

9  that class members may appear through an attorney and that the Court will exclude those members

10  requesting exclusion.  Dkt. No. 51-1 at 40, 43–44.  The notice also specifies the procedure for

11  requesting exclusion.  *Id.* at 43–44.  In addition, the notice explains that class members may object

12  and describes the procedure for doing so, lists the time and place of the final approval hearing,

13  describes the attorneys' fees to be requested by class counsel, and states that additional

14  information is available through class counsel or the claims administrator, whose contact

15  information is provided in the notice.  Dkt. No. 51-1 at 40–45.

16        However, although the notice states that class members who "do nothing" "will also be

17  bound by the settlement and release," the notice does not fully explain what it means to be bound

18  by a class-wide judgment under Rule 23(c)(3).

19        Moreover, the Ninth Circuit has concluded that in this digital age, a single mailed notice

20  may fall short of "the best notice that is practicable under the circumstances."  *SFBSC Mgmt.,*

21  *LLC*, 944 F.3d at 1045–48 (a single mailed notice was not best practicable notice even when

22  supplemented with posters hung in the defendant's nightclubs).  Given the existence of numerous

23  other options to improve the notice process (email, social media, postings on relevant online

24  message boards), the Court is concerned that the proposed settlement provides no other means of

25  reaching employees, particularly former employees who might be difficult to reach by mail.  *See*

26  *id.* at 1046–47.

27        This factor weighs against preliminary approval of the settlement.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

### 6. Proposed attorneys' fee award and preferential treatment

With respect to preferential treatment, the Settlement Agreement provides that funds will be allocated among class members on a pro rata basis according to the number of pay periods during which they performed work for Lhoist during the class period. Dkt. No. 51-1, Ex. A ¶ 34. This proposed distribution does not appear to grant preferential treatment to any class members. None of the named plaintiffs will receive incentive awards. *See* Dkt. No. 51-1, Ex. A.

The Settlement Agreement provides for an attorneys' fee award of up to $106,666.67, which represents 33.33% of the gross settlement amount and 63.84% of the proposed net settlement amount. The proposed award gives the Court pause. The Ninth Circuit has held that an award representing 25% of a common settlement fund is a "benchmark" for a reasonable fee award, unless special circumstances warrant a departure. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942; *Staton*, 327 F.3d at 968; *Fischel v. Equitable Life Assur. Society*, 307 F.3d 997, 1006–1007 (9th Cir. 2002). Here, plaintiffs have not described any special circumstances justifying attorneys' fees comprising 33% of the settlement fund. While any award of fees will be the subject of separate motion practice, the present record does not support an award of fees greater than 25% of the gross settlement amount.

### 7. Adequacy of representation and absence of collusion

Although the litigation history in this matter does not suggest any collusion between the parties, the Court "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests [] to infect the negotiations." *In re Bluetooth*, 654 F.3d at 947. Here, the settlement is non-reversionary, Dkt. No. 51 at 2, Dkt. No. 51-1, Ex. A ¶¶ 42, 50, and no agreement provides for the payment of attorneys' fees separate and apart from the class funds. However, class counsel propose to receive, without adequate justification, a disproportionate distribution of the settlement (33.33% of the gross settlement amount and 63.84% of the proposed net settlement amount). Dkt. No. 51 at 11–12. Moreover, as explained above, the Court lacks information about Mr. Mendoza's individual claims and the parties' resolution of those claims.

Accordingly, although nothing in the record suggests explicit collusion, the Court does not

20

have sufficient information to adequately evaluate this factor.

**V.      CONCLUSION**

For the foregoing reasons, the Court finds that plaintiffs have met the requirements for conditional class certification, but have not shown that Mr. Mendoza is an adequate class representative.  Plaintiffs also have not shown that the proposed settlement of the class and representative claims is fair, adequate, and reasonable.  Accordingly, the Court denies without prejudice plaintiffs' motion for preliminary approval of the settlement.

The parties shall jointly advise the Court by **March 28, 2022** how they intend to proceed in this action.

**IT IS SO ORDERED.**

Dated: March 21, 2022

VIRGINIA K. DEMARCHI
United States Magistrate Judge