B. James Fitzpatrick (SBN: 129056)
bjfitzpatrick@fandslegal.com
Charles Swanston (SBN: 181882)
cswanston@fandslegal.com
Laura L. Franklin (SBN: 282642)
lfranklin@fandslegal.com
**FITZPATRICK & SWANSTON**
555 S. Main Street
Salinas, CA 93901
Telephone: (831) 755-1311
Facsimile:  (831) 755-1319

Larry W. Lee (State Bar No. 228175)
lwlee@diversitylaw.com
Max W. Gavron (State Bar No. 291697)
mgavron@diversitylaw.com
**DIVERSITY LAW GROUP, P.C.**
515 S. Figueroa Street, Suite 1250
Los Angeles, CA 90071
(213) 488-6555
(213) 488-6554 facsimile

Attorneys for Plaintiffs
SIONE FUAPAU, ALFREDO GODINEZ, GABRIEL MENDOZA,
MANUEL VACA, MICHAEL NAU, ANTONIO GUZMAN, JESUS GUERRERO,
IVAN PACHECO, and MIGUEL REYES, JR.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIONE FUAPAU, ALFREDO GODINEZ, GABRIEL MENDOZA, MANUEL VACA, MICHAEL NAU, ANTONIO GUZMAN, JESUS GUERRERO, IVAN PACHECO, and MIGUEL REYES, JR., <br><br> Plaintiffs, <br><br> v. <br><br> LHOIST NORTH AMERICA OF ARIZONA, INC.; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No. 20-cv-04404-VKD <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Date:       September 13, 2022 <br> Time:       10:00 A.M. <br> Courtroom:  2 <br> Judge:      Hon. Virginia K. DeMarchi |

-1-

1

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

2       **PLEASE TAKE NOTICE** that on September 13, 2022, at 10:00 a.m., or as soon

3   thereafter as the matter may be heard in Courtroom 2 of the United States District Court for the

4   Northern District of California, San Jose Courthouse, located at 280 South 1st Street, San Jose,

5   California 95113, before the Honorable Virginia K. DeMarchi, Plaintiffs Sione Fuapau, Alfredo

6   Godinez, Gabriel Mendoza, Manuel Vaca, Michael Nau, Antonio Guzman, Jesus Guerrero, Ivan

7   Pacheco, and Miguel Reyes, Jr. (collectively, "Plaintiffs") will and hereby do move the Court for

8   an Order (1) granting final approval of the proposed class action settlement; and (2) approving

9   Class Counsel's application for attorneys' fees in the amount of $80,000.00 (25% of the Class

10  Settlement Amount) and reimbursement of costs in the amount of $15,845.29.

11      This Motion is based upon this Notice, the attached Memorandum of Points and

12  Authorities, the accompanying Declarations of B. James Fitzpatrick, Laura L. Franklin, Larry W.

13  Lee, Max W. Gavron, Sione Fuapau, Alfredo Godinez, Gabriel Mendoza, Manuel Vaca, Michael

14  Nau, Antonio Guzman, Jesus Guerrero, Ivan Pacheco, Miguel Reyes, Jr., and Kevin Lee of

15  Phoenix Settlement Administrators, any oral argument of counsel, the complete files and records

16  in the above-captioned matter, and such additional matters as the Court may consider.

17

18  Date: August 4, 2022                    FITZPATRICK & SWANSTON
                                            DIVERSITY LAW GROUP
19

20                                          By: _____

21                                          B. James Fitzpatrick, Esq.
                                            Larry W. Lee, Esq.
22                                          Attorneys for Plaintiffs
                                            SIONE FUAPAU, ALFREDO GODINEZ,
23                                          GABRIEL MENDOZA, MANUEL VACA,
                                            MICHAEL NAU, ANTONIO GUZMAN,
24                                          JESUS GUERRERO, IVAN PACHECO,
                                            and MIGUEL REYES, JR.
25

26

27

28

-2-

1

## TABLE OF CONTENTS

2

Page

I.    INTRODUCTION.................................................................................................. 7

II.   LITIGATION HISTORY ..................................................................................... 7

III.  THE SETTLEMENT NOTICE PROCESS HAS BEEN DUTIFULLY
      ADHERED TO AND SUCCESSFULLY CARRIED OUT ............................... 9

IV.   THE SETTLEMENT........................................................................................... 10

V.    THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL
      APPROVAL ........................................................................................................ 11

      A.  The Strength of Plaintiffs' Case Supports Settlement.............................. 13

      B.  Risks, Expense, and Duration of Continued Litigation Support Settlement.......... 13

      C.  The Settlement Amount Favors Settlement.............................................. 14

      D.  The Extent of Investigation Favors Settlement ....................................... 15

      E.  The Recommendations of Counsel Favor Approval of the Settlement.................. 15

      F.  The Class Has Responded Favorably to the Proposed Settlement......................... 16

      G.  Proposed Attorneys' Fee Award & Absence of Collusion ...................................... 16

VI.   THE REQUESTED ATTORNEYS' FEES AND COSTS SHOULD BE
      APPROVED ........................................................................................................ 17

      A.  Percentage of the Fund............................................................................. 18

      B.  The Lodestar Calculation "Cross-Check"................................................ 19

            1.    Plaintiffs' Counsel's Lodestar is Reasonable ................................. 20

      C.  The Court Should Approve the Request for Reimbursement of Costs.................. 21

VII.  THE ADMINISTRATOR'S COSTS SHOULD BE APPROVED .............................. 21

VIII. NOTICE TO THE LWDA ................................................................................. 21

IX.   CONCLUSION .................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) ................................................. 12

*Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980) ......................................... 15

*Bellinghausen v. Tractor Supply Company*, 306 F.R.D. 245, 258 (N.D. Cal. March 20, 2015) . 14, 16, 17, 18

*Briseño v. Henderson*, 998 F.3d 1014, 1031 (9th Cir. 2021) ........................................... 12, 13, 16

*Camilo v. Ozuna*, 18-cv-02842-VKD, 2020 WL 1557423, at *21–22 (N.D. Cal. Apr. 1, 2020) 17, 18

*Chavez v. Converse, Inc.*, No. 15-CV-03746-NC, 2020 WL 10575028, at *6 (N.D. Cal. Nov. 25, 2020) ......................................................................................................... 18

*Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010) ........... 13, 15, 16

*Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir .2004) .................................. 12, 16

*Deaver v. Compass Bank*, No. 13-cv-00222-JSC, 2015 WL 8526982, at *11–12 (N.D. Cal. Dec. 11, 2015) ......................................................................................................... 18

*Dyer v. Wells Fargo Bank, N.A.*, 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014)... 13, 14, 15, 16

*Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 113CV00474DADBAM, 2017 WL 749018, at *7 (E.D. Cal. Feb. 27, 2017) ................................................................. 18

*Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002) ........ 18

*Frank v. Gaos*, 139 S. Ct. 1041 (2019) ................................................................. 19

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) .................. passim

*In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 748 (9th Cir. 2017) ...................... 19

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) .................................. 15

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ........................... 16

*Internal Improvement Fund Trs. v. Greenough*, 105 U.S. 527, 532 (1881) ................................ 17

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) ........................................... 12, 13, 16

*Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058 (N.D. Cal. 2019) ........................... 19

*Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668 (9th Cir. 2021) .......................................... 19

*Miguel-Sanchez v. Mesa Packing, LLC*, No. 20-CV-00823-VKD, 2021 WL 4893394, at *4 (N.D.

-4-

Cal. Oct. 20, 2021) ................................................................................................... 9

*Moore v. PetSmart, Inc.*, No. 5:12-cv-03577-EJD, 2015 WL 5439000, at *11 (N.D. Cal. Aug. 4, 2015) ............................................................................................................................. 18

*Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) ........... 13

*Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. Oct. 8, 2014) ......................................... 15

*Pallas v. Pacific Bell*, 1999 WL 1209495, at *6 (N.D. Cal. July 13, 1999) ................................ 16

*Rivas v. BG Retail, LLC*, No. 16-cv-06458-BLF, 2020 WL 264401, at *8 (N.D. Cal. Jan. 16, 2020) ............................................................................................................................. 18

*Rodriguez v. Nike Retail Servs., Inc.*, 928 F.3d 810, 818 (9th Cir. 2019) ................................... 19

*Roes, 1–2 v. SFBSC Mgmt.*, 944 F.3d 1035, 1046 n.7 (9th Cir. 2019) ............................ 9, 10, 12

*Smith v. American Greetings Corp.*, 14-cv-02577-JST, 2016 WL 362395, at *8–9 (N.D. Cal. Jan. 29, 2016) ..................................................................................................................... 18

*Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) .................................................... 12, 18

*Uschold v. NSMG Shared Servs.*, 2020 WL 3035776, at *29 (N.D. Cal. 2020) ................... 14, 15

*Villalpando v. Exel Direct Inc.*, No. 12-cv-04137-JCS, 2016 WL 7740854, *1, *2 (N.D. Cal. Dec. 12, 2016) .................................................................................................................. 18

**State Cases**

*Ketchum vs. Moses*, 24 Cal. 4th 1122, 1133 (2001) .................................................................. 21

*Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480, 503 (2016) .......................................................... 18

*Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal. App. 4th 440, 447 (2000) ........................... 21

**Statutes**

28 U.S.C. § 1441 ...................................................................................................................... 8

28 U.S.C. § 1446 ...................................................................................................................... 8

Business and Professions Code § 17200, *et seq* ................................................................... 8, 10

Labor Code § 1174 ............................................................................................................... 8, 10

Labor Code § 1175 ............................................................................................................... 8, 10

Labor Code § 1194 ............................................................................................................... 8, 10

Labor Code § 1198 ............................................................................................................... 8, 10

Labor Code § 1199 .................................................................................................................. 10

Labor Code § 201 ................................................................................................................... 10

*Fuapau v. Lhoist North America of Arizona, Inc.*
Case No. 20-cv-04404-VKD

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF SETTLEMENT

Labor Code § 202 ........................................................................................................ 10

Labor Code § 203 ........................................................................................................ 10

Labor Code § 204 ................................................................................................... 8, 10

Labor Code § 216 ................................................................................................... 8, 10

Labor Code § 218 ................................................................................................... 8, 10

Labor Code § 218.5 ............................................................................................. 10, 21

Labor Code § 218.6 ...................................................................................................... 10

Labor Code § 221 ................................................................................................... 8, 10

Labor Code § 223 ................................................................................................... 8, 10

Labor Code § 226 ................................................................................................... 8, 10

Labor Code § 226(e) ..................................................................................................... 21

Labor Code § 226.3 ...................................................................................................... 10

Labor Code § 226.7 ................................................................................................ 8, 10

Labor Code § 2698 ......................................................................................................... 8

Labor Code § 2699(g)(1) .............................................................................................. 21

Labor Code § 2800 ........................................................................................................ 10

Labor Code § 2802 ................................................................................................. 8, 10

Labor Code § 510 .......................................................................................................... 10

Labor Code § 512 .......................................................................................................... 10

Labor Code § 558 .......................................................................................................... 10

**Other Authorities**

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.45 (4th ed. 2002) .......... 14

**Rules**

Fed. R. Civ. P. 23 .......................................................................................................... 10

Fed. R. Civ. P. 23(c)(2) .................................................................................................. 9

Fed. R. Civ. P. 23(e) .............................................................................................. 11, 12

Fed. R. Civ. P. 23(e)(2) ................................................................................................ 12

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

By this motion, Plaintiffs Sione Fuapau, Alfredo Godinez, Gabriel Mendoza, Manuel Vaca, Michael Nau, Antonio Guzman, Jesus Guerrero, Ivan Pacheco, and Miguel Reyes, Jr. (collectively, "Plaintiffs") seek final approval of a substantial class-wide settlement reached between Plaintiff and Defendant Lhoist North America of Arizona, Inc. ("Defendant") (together, Plaintiffs and Defendant referred to as the "Parties"). On May 11, 2022, the Court entered an Order Granting Plaintiffs' Motion for Preliminary Approval of Class and Representative Action Settlement (Dkt. Nos. 63 and 64) ("Preliminary Approval Order"). The Parties now seek this Court's final approval of the settlement.

Plaintiffs also seek an order approving Class Counsel's application for attorneys' fees in the amount of $80,000.00 (25% of the class settlement amount of $320,000.00 ("Class Settlement Amount")) and reimbursement of litigation costs in the amount of $15,845.29. The Parties detailed the terms of the settlement in the Notice of Class and Representative Action Settlement ("Notice Packet"), which was mailed to all Class Members.

The settlement requires Defendant to pay a total of Three Hundred Twenty Thousand Dollars ($320,000.00), a sum which represents a substantial recovery for the members of the Class. This settlement is non-reversionary, such that no monies will revert to Defendant. (Settlement Agreement ¶¶ 9, 15, 50.) As such, there was no claims process involved.  Class Members were given an opportunity to object or opt-out of the settlement. To date, there have been zero (0) opt outs and zero (0) objections to the settlement. (Declaration of Kevin Lee ("K. Lee Decl.") ¶¶ 8, 9.)  This shows that the overwhelming majority of Class Members have reacted favorably to the settlement as there is a **100% participation rate and not a single objection from the 116 member class**.  This favorable response supports approval and Plaintiffs' request that the Court grant this Motion and enter judgment accordingly.

### II.   LITIGATION HISTORY

On March 5, 2020, Plaintiffs filed a class and representative action complaint against Defendant in the Superior Court of California, County of Monterey, alleging the following

-7-

1  causes of action: (1) violation of Labor Code §§ 226.7 and 1198, for failure to provide meal

2  periods; (2) violation of Labor Code §§ 226.7 and 1198, for failure to provide rest periods; (3)

3  violation of Labor Code §§ 1194 and 1198, for failure to pay hourly and overtime wages; (4)

4  violation of Labor Code §§ 226, 1174, and 1175, for failure to comply with itemized wage

5  statement and records requirements; (5) violation of Labor Code §§ 204, 216, 218, 221, 223,

6  1194, and 1198, for failure to pay agreed wages; (6) violation of Labor Code § 204, for failure to

7  pay wages in a timely manner; (7) violation of Labor Code § 2802, for failure to reimburse work

8  related expenses; (8) violation of Labor Code § 2698, the Private Attorneys General Act

9  ("PAGA"), for penalties; and (9) violation of Business and Professions Code § 17200, *et seq*., for

10 unfair business practices. (Dkt. No. 1, Ex. A.)

11        On July 1, 2020, Defendant filed a Notice of Removal of Action to Federal Court

12 pursuant to 28 U.S.C. §§ 1441, 1446. (Dkt. No. 1.) Plaintiffs subsequently filed a First Amended

13 Complaint on July 24, 2020, adding a class claim for violation for Labor Code § 226 and

14 individual causes of action for retaliation and wrongful termination on behalf of Gabriel

15 Mendoza. (Dkt. No. 15.)

16        On October 20, 2021, Plaintiffs filed a Second Amended Complaint, modifying

17 Plaintiffs' dates of employment and asserting additional class claims. (Dkt. No. 43.) The Second

18 Amended Complaint is the operative Complaint ("Complaint").

19        With respect to investigation and discovery, Plaintiffs conducted extensive investigation

20 of the facts surrounding the claims in this action before filing suit, as well as during the course of

21 litigating and prosecuting this case. (Declaration of Max W. Gavron ("Gavron Decl.") ¶ 2.) The

22 Parties served their Initial Disclosures and propounded and responded to written discovery,

23 including interrogatories and requests for production of documents. (*Id*. ¶ 2.) Plaintiffs also took

24 the deposition of Defendant's FRCP 30(b)(6) witness regarding payroll policies and procedures

25 and engaged in further investigation, leading to the filing of a motion for class certification. (*Id*. ¶

26 2.) In connection with two mediations, Plaintiffs also obtained and reviewed information

27 regarding the number of employees in the putative class and the number of payroll periods at

28 issue. (*Id*. ¶ 2.)

On February 26, 2021, the Parties attended a mediation with respected mediator, Michael Loeb, Esq. While the Parties were unable to reach an agreement, they continued to meet and confer and ultimately conducted a second mediation with Mr. Loeb on September 1, 2021. (Gavron Decl. ¶ 3.) As a result of subsequent arm's length negotiations following mediation, the Parties were able to reach a settlement of all terms. (*Id.*)

On May 11, 2022, the Court granted preliminary approval.  (Dkt. Nos. 63-64.)

## III.  THE SETTLEMENT NOTICE PROCESS HAS BEEN DUTIFULLY ADHERED TO AND SUCCESSFULLY CARRIED OUT

As noted above, preliminary approval was granted on May 11, 2022. At that time, Phoenix Settlement Administrators ("Claims Administrator") was appointed by the Court as the Claims Administrator.  The Parties, through the work of the Claims Administrator, have complied with this Court's orders concerning dissemination of the class notice. (K. Lee Decl. ¶¶ 2-5.)

The notice was mailed to the class of 116 individuals utilizing the data provided by Defendant. (K. Lee Decl. ¶ 5.) Of those, none were returned with an invalid address and thus none were considered undeliverable. (*Id*. ¶¶ 6-7.)  Pursuant to the Court's Preliminary Approval Order, because none of the notices were considered undeliverable, Phoenix did not provide notice via email.  Dkt. No. 64, pg. 5 ("If a valid mailing address cannot be identified, the Claims administrator will email the notice.").  The Ninth Circuit has held "that neither due process nor Rule 23's standard necessarily require actual notice," *Roes, 1–2 v. SFBSC Mgmt.*, 944 F.3d 1035, 1046 n.7 (9th Cir. 2019), and parties are not required to implement all potential options in every case, *id.* at 1047.  Accordingly, the notice provided here exceeds the standards set forth by Rule 23(c)(2).  *See Miguel-Sanchez v. Mesa Packing, LLC*, No. 20-CV-00823-VKD, 2021 WL 4893394, at *4 (N.D. Cal. Oct. 20, 2021) (approving of notice where "Ultimately, 613 class members, or 87.7% of the class, received actual notice of the proposed settlement.").

As noted in the Declaration of Kevin Lee, on June 27, 2022, Phoenix received contact from the wife/spouse of a putative class member who purported to request to be excluded on behalf of the deceased class member.  (Kevin Lee Decl., ¶ 8 n. 1.)  Phoenix reached out to obtain

1  a copy of the death certificate to confirm she was executor of the estate, but the wife/spouse

2  shared that she would not be sending a copy of the death certificate/further documentation to

3  confirm that she had power of attorney.  *Id.*  After conferring with counsel for the Parties,

4  Phoenix calculated the proposed distributions assuming that the request for exclusion would not

5  be accepted.  *Id.*  While counsel was unable to find legal authority addressing this particular

6  scenario, the notice provided and determination not to accept the request for exclusion comports

7  with due process, Rule 23, and the terms of the settlement agreement.  *See SFBSC Mgmt.*, 944

8  F.3d at 1046 n.7 (discussing fact that actual notice is not required); Settlement Agreement ¶ 44.

9  **IV.    THE SETTLEMENT**

10         The settlement terms were summarized in detail in the Motion for Preliminary Approval,

11  and Plaintiffs respectfully incorporate those arguments herein to avoid unnecessary duplication.

12  The specific terms of the settlement are set forth in the Settlement Agreement and the

13  Preliminary Approval Order. (Dkt. No. 51-1 at Exhibit A; and Dkt. Nos. 63 and 64.) The

14  principal terms are:

15         a.    The Class is defined as "All current and former non-exempt employees of

16  Defendant who worked in the State of California at any time during the Class Period (October

17  20, 2017, through November 15, 2021).

18         b.    The Class is releasing:

19
20
21
22
23
24
25
26
27
> any and all claims, rights, demands, liabilities, and causes of action
> based on the same set of operative facts as those set forth in the
> operative Second Amended Complaint, including but not limited to
> claims based on the following categories of allegations: All claims
> for violation of Labor Code §§ 201, 202, 203, 204, 216, 218,
> 218.5, 218.6, 221, 223, 226, 226.3, 226.7, 510, 512, 558, 1174,
> 1175, 1194, 1198, 1199, 2800, and 2802, and Business and
> Professions Code § 17200, *et seq*.**Error! Bookmark not defined.**,
> and all applicable IWC Wage Orders for failure to provide proper
> meal and rest breaks and/or pay meal and rest period premiums at
> the regular rate of pay, pay all overtime wages owed, pay all
> agreed wages and minimum wage, furnish accurate wage
> statements, reimburse business  expenses, pay all wages in a timely
> manner and upon separation of employment, and unfair business
> practices.

28

-10-

1    c.    Defendant will pay a total Class Settlement Amount of $320,000.00. This sum

2    includes payments made to the Participating Class Members, claims administration costs, award

3    of attorneys' fees and costs, and payment to the LWDA.

4    d.    The sum available for use as payments to Class Members after the claims

5    administration costs, award of attorneys' fees and costs, and payment to the LWDA shall be

6    referred to as the Net Settlement Amount. Defendant agrees that it shall pay the entirety (100%)

7    of the Net Settlement Amount. **In other words, the settlement is non-reversionary, meaning**

8    **that no funds will revert to Defendant.**

9    e.    No claim forms were necessary for any Class Member to participate in the

10    settlement and receive their share of the settlement. Thus, any Class Member who did not opt-out

11    in connection with this settlement will automatically receive his/her share of the settlement

12    proceeds. On average, each Class Member will receive approximately a payment of $1,706.08.[1]

13    (K. Lee Decl. ¶ 14.) The highest individual settlement payment to be paid will be approximately

14    $2,757.98. (*Id.*)

15    f.    Any remaining monies from uncashed checks will be paid to Watsonville Law

16    Center, as a *cy pres* beneficiary.

17    g.    All of this Court's orders in connection with the claims administration process

18    have been followed. (*See generally* K. Lee Decl. filed herewith).

19    The settlement represents a compromise between the positions and evaluations of the two

20    sides to this controversy. Clearly, there were significant disagreements between the Parties as to

21    the facts and the law.

22    **V.    THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL**

23    Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action

24    must receive Court approval. *See* Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a

25

26    [1] The Declaration of Kevin Lee provides the anticipated distribution of the settlement for two scenarios.  Because
the Settlement Agreement originally provided for up to 1/3 of the settlement to be allocated to attorneys' fees, he

27    details the proposed distribution under that scenario.  However, Plaintiffs' counsel moves for attorneys' fees of 25%
of the settlement, which results in a higher portion of the settlement being distributed to the Class.  The amounts

28    referenced here and throughout the brief contemplate the 25% fee award.

1    certified class—or a class proposed to be certified for purposes of settlement—may be settled,

2    voluntarily dismissed, or compromised only with the court's approval."). The Ninth Circuit has

3    repeatedly noted that a strong judicial policy favors settlement of Rule 23 class actions. *Briseño*

4    *v. Henderson*, 998 F.3d 1014, 1031 (9th Cir. 2021) (quoting *Allen v. Bedolla*, 787 F.3d 1218,

5    1223 (9th Cir. 2015)). However, no broad presumption of fairness applies to such settlements.

6    *SFBSC Mgmt., LLC*, 944 F.3d at 1049. And where the parties reach a settlement before class

7    certification, courts must "employ[ ] extra caution and more rigorous scrutiny," *id.*, and "peruse

8    the proposed compromise to ratify both the propriety of the certification and the fairness of the

9    settlement," *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *see also In re Bluetooth*

10   *Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ("Prior to formal class

11   certification, there is an even greater potential for a breach of fiduciary duty owed the class

12   during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny

13   for evidence of collusion or other conflicts of interest than is ordinarily required under Rule

14   23(e) before securing the court's approval as fair.").

15        In the Ninth Circuit, "a district court examining whether a proposed settlement comports

16   with Rule 23(e)(2) is guided by the eight '*Churchill* factors.'" *Kim v. Allison*, 8 F.4th 1170, 1178

17   (9th Cir. 2021) (citations omitted). These *Churchill* factors include:

18        (1) The strength of the plaintiff's case; (2) the risk, expense, complexity, and
         likely duration of further litigation; (3) the risk of maintaining class action status
19       throughout the trial; (4) the amount offered in settlement; (5) the extent of
         discovery completed and the stage of the proceedings; (6) the experience and
20       views of counsel; (7) the presence of a governmental participant; and (8) the
         reaction of the class members of the proposed settlement.
21

22   *Bluetooth*, 654 F.3d at 946 (citing *Churchill Vill.*, 361 F.3d at 576–77).

23        "[C]onsideration of these eight *Churchill* factors alone is not enough to survive appellate

24   review." *Kim*, 8 F. 4th at 1179 (citation omitted). The Ninth Circuit recently held that Rule

25   23(e)(2), as revised in 2018, requires courts "to go beyond our precedent" by accounting for the

26   terms of any proposed award of attorneys' fees when determining whether the relief provided for

27   the class is adequate. *Briseño*, 998 F.3d at 1023–26; *see also Kim*, 8 F.4th at 1179. Specifically,

28   in reviewing settlements struck both before and after class certification, "district courts must

-12-

apply *Bluetooth's* heightened scrutiny" to examine whether the attorneys' fee arrangement shortchanges the class. *Id.* at 1023–25. The *Bluetooth* court identified three signs of such shortchanging: (1) class counsel's receipt of a disproportionate distribution of the settlement; (2) a "clear sailing" agreement "providing for the payment of attorneys' fees separate and apart from class funds"; and (3) an arrangement whereby fees that awarded are reverted to the defendants, rather than added to the class fund. 654 F.3d at 947.  Plaintiffs address each of these factors below.

### A.  The Strength of Plaintiffs' Case Supports Settlement

This factor is generally satisfied when plaintiffs must overcome barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). As noted above, while Plaintiffs believe that the Class could be certified and that there is ample case law to support Plaintiffs' contentions in this matter, there was no guarantee.  Plaintiffs detailed the potential hurdles to the Court in the Motion for Preliminary Approval and Supplemental briefing, which included Defendant's arguments regarding preemption of many of the claims asserted, its compliant written wage and hour policies, potential impediments to class certification, existence of collective bargaining agreements, waivers, and releases. Therefore, this factor favors settlement. *See Dyer v. Wells Fargo Bank, N.A.*, 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014) (factor favors final approval where "[p]laintiffs acknowledge that, if the settlement is not approved, they will encounter significant obstacles in establishing their claims"); *see also Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) (finding that the relative strength of plaintiffs' case favored settlement because plaintiffs admitted they would face hurdles in proving liability and damages).

### B.  Risks, Expense, and Duration of Continued Litigation Support Settlement

"Difficulties and risks in litigating weigh in favor of approving a class settlement." *Dyer*, 2014 WL 5369395, at *3 (citation omitted). In addition to the obstacles set forth above, even if Plaintiffs had prevailed at trial, there was a likelihood that Defendant would have appealed the verdict. Thus, the risks, expense, and duration of continued litigation favor final approval of the settlement. *See Dyer*, 2014 WL 5369395, at *3 ("This factor supports final approval of this

-13-

1    settlement because, without a settlement, Plaintiffs would risk recovering nothing after a lengthy

2    and costly litigation.").

3    **C.    The Settlement Amount Favors Settlement**

4    The standard of review for class settlements is whether the settlement is within a range of

5    reasonableness. As Professor Newberg comments: "Recognizing that there may always be a

6    difference of opinion as to the appropriate value of settlement, the courts have refused to

7    substitute their judgment for that of the proponents. Instead the courts have reviewed settlements

8    with the intent of determining whether they are within a range of reasonableness.…" 4 Alba

9    Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.45 (4th ed. 2002). As detailed in

10   Plaintiff's Motion for Preliminary Approval, Supplemental Briefing submitted in support thereof,

11   and the Court's Order granting preliminary approval, the settlement is in the range of

12   reasonableness when compared to the potentially available penalties, risk in moving forward

13   with litigation, and the possibility of appeals. *See* Dkt. Nos. 51, 59, 63, 64.

14   Plaintiffs estimated that the settlement amount represents approximately 11.65% of the

15   potential recovery, which is fair, adequate, and reasonable considering the potential hurdles to a

16   favorable verdict.   *See, e.g., Uschold v. NSMG Shared Servs.*, 2020 WL 3035776, at *29 (N.D.

17   Cal. 2020) (approving settlement where net settlement amount reflected a 12% recovery of

18   potential damages).

19   The settlement fund is non-reversionary, such that 100% of the Net Settlement Amount

20   will be available for distribution to Class Members who do not opt-out. Moreover, the settlement

21   did not require claim forms. Rather, Class Members who did not opt-out will receive a check.

22   Further, the settlement fund will be paid out entirely in cash (as opposed to a voucher, coupon,

23   etc.). Here, not a single objection was filed, which further supports the reasonableness of the

24   settlement amount.  *Bellinghausen v. Tractor Supply Company*, 306 F.R.D. 245, 258 (N.D. Cal.

25   March 20, 2015) ("Courts have repeatedly recognized that an absence of a large number of

26   objections to a proposed class action settlement raises a strong presumption that the terms of the

27   proposed class settlement action are favorable to the class members.").

28   //

1

**D.    The Extent of Investigation Favors Settlement**

2      Here, settlement was reached following years of litigation and motion practice, including

3   the exchange of Initial Disclosures and written discovery, taking the deposition of Defendant's

4   FRCP 30(b)(6) witness regarding payroll policies and procedures, and Plaintiff moving for class

5   certification. Counsel for the Parties also engaged in a meet and confer process regarding the

6   data necessary to perform a damage analysis and engage in a meaningful mediation. (Gavron

7   Decl. ¶ 2.) In connection with two mediations, Defendants provided certain class payroll data for

8   Plaintiffs to review and analyze. (*Id*.)

9      Courts have held that such discovery is sufficient for parties to make an informed

10  decision regarding the adequacy of the settlement. *See*, *e.g.*, *Dyer*, 2014 WL 5369395, at *3

11  (parties' participation in written discovery, depositions, witness interviews, and formal mediation

12  favors an informed settlement); *Chun-Hoon*, 716 F. Supp. 2d at 848 ("true value of the class

13  claims is well-known and class counsel possess a sufficient understanding of the issues involved

14  and the strengths and weaknesses of the case"); *see also In re Mego Fin. Corp. Sec. Litig.*, 213

15  F.3d 454, 459 (9th Cir. 2000) (formal discovery not necessary where the parties have sufficient

16  information to make an informed decision about settlement).

17

**E.    The Recommendations of Counsel Favor Approval of the Settlement**

18      The recommendations of experienced counsel should be given considerable weight.  "The

19  court gives considerable weight to class counsel's opinions regarding the settlement due to

20  counsel's experience and familiarity with the litigation." *Uschold*, 2020 WL 3035776, at *32–33

21  (N.D. Cal. 2020) (finding counsel's assertion that the settlement was fair, adequate, and

22  reasonable supported final approval of the settlement, where counsel had extensive experience

23  litigating wage-and-hour class actions); *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal.

24  Oct. 8, 2014) (same).

25      Counsel for Plaintiffs have broad experience litigating employment class actions.

26  (Declaration of B. James Fitzpatrick ("Fitzpatrick Decl.") ¶ 4; Declaration of Laura L. Franklin

27  ("Franklin Decl.") ¶¶ 8, 9; Declaration of Larry W. Lee ("Lee Decl.") ¶¶ 6-10; Gavron Decl. ¶¶

28  9-14.) They support this settlement as a fair and reasonable settlement which is in the best

-15-

interest of the settlement class. (Fitzpatrick Decl. ¶ 9; Franklin Decl. ¶ 2; Lee Decl. ¶ 5; Gavron Decl. ¶ 5.) Therefore, this factor favors approval of the settlement. *See Dyer*, 2014 WL 5369395, at *3 (recommendation of plaintiffs' counsel supports approval of settlement); *Chun-Hoon*, 716 F. Supp. 2d at 848 (same). Plaintiffs also support the settlement. (*See generally* Declarations of Sione Fuapau, Alfredo Godinez, Gabriel Mendoza, Manuel Vaca, Michael Nau, Antonio Guzman, Jesus Guerrero, Ivan Pacheco, and Miguel Reyes, Jr.)

### F.    The Class Has Responded Favorably to the Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that" the settlement is favorable to class members. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008), *see Pallas v. Pacific Bell*, 1999 WL 1209495, at *6 (N.D. Cal. July 13, 1999) ("The greater the number of objectors, the heavier the burden on the proponents of settlement to prove fairness.").

Here, **not a single Class Member out of 116 individuals has objected** to this settlement and **no Class Members have opted out**. (K. Lee Decl. ¶¶ 8, 9.) In other words, this settlement has a 100% participation rate. Thus, the absence of any objections or opt-outs strongly support the fairness of the settlement. *See Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (approving settlement with 45 objections and 500 opt-outs from a 90,000-person class, representing .05% and .56% of the class, respectively); *Dyer*, 2014 WL 5369395, at *4 (strong support from class in favor of approving settlement where only three of 8,695 class members opted out); *Bellinghausen*, 306 F.R.D. at 258.

### G.    Proposed Attorneys' Fee Award & Absence of Collusion

As directed by the Ninth Circuit in *Briseño* and *Kim*, the Court should account for the terms of the proposed attorneys' fee award when determining whether the relief provided for the class is adequate. 998 F.3d at 1023–26; 8 F.4th at 1179. Specifically, the Court must examine the attorneys' fee arrangement for the three signs of collusion identified by the Ninth Circuit in *Bluetooth* and described above. *Briseño*, 998 F.3d at 1023–25 (citing *Bluetooth*, 654 F.3d at 947).

*Bluetooth* Factor 1: While the Settlement Agreement provided for up to 1/3 of the gross

-16-

1    settlement amount as attorneys' fees, Plaintiffs' counsel only requests 25%, or $80,000.00.  The

2    proposed attorneys' fees of $80,000.00 amounts to approximately 40% of the actual payout to

3    the class ($80,000.00 / $197,904.71 = 40.42%).  Courts routinely find a proportion in this range

4    does not indicate collusion.  *See Camilo v. Ozuna*, 18-cv-02842-VKD, 2020 WL 1557423, at

5    *21–22 (N.D. Cal. Apr. 1, 2020) (court "not prepared to say" that class counsel's request in fees,

6    about 52% of the actual total payout to class, was a sign of collusion); *Bellinghausen*, 306 F.R.D.

7    at 258–59 (where amount of attorneys' fees requested was 38.5% of total actual payout to class,

8    such request was "reasonable").

9         *Bluetooth* Factor 2: While the Settlement Agreement included a provision that Defendant

10    would not oppose a fee request of up to 1/3 of the gross settlement amount, Plaintiffs' counsel

11    has requested only 25%.  Accordingly, on balance, this factor demonstrates no collusion.

12         *Bluetooth* Factor 3: The Settlement Agreement does not permit any of the settlement

13    amount to revert to Defendant and thus this factor weighs in favor of approval.

14         Analysis of the factors above, demonstrates that the settlement is fair, adequate, and

15    reasonable.

16    **VI.    THE REQUESTED ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED**

17         "The Ninth Circuit has approved two methods of determining attorneys' fees in cases

18    where, as here, the amount of the attorneys' fee award is taken from the common fund set aside

19    for the entire settlement: the 'percentage of the fund' method and the 'lodestar' method."

20    *Bellinghausen*, 306 F.R.D. at 259–60 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047

21    (9th Cir. 2002)). "The district court retains discretion in common fund cases to choose either

22    method," *id.*, but the Ninth Circuit recommends that district courts apply one method, using the

23    other to cross-check the appropriateness of the amount of requested attorneys' fees. *See*

24    *Bluetooth*, 654 F.3d at 944. "Under either approach, '[r]easonableness is the goal, and

25    mechanical or formulaic application of either method, where it yields an unreasonable result, can

26    be an abuse of discretion.'" *Bellinghausen*, 306 F.R.D. at 260 (quoting *Fischel v. Equitable Life*

27    *Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002)).

28    //

1

### A. Percentage of the Fund

2    Generally, an attorneys' fee award of 25%, which is what Plaintiffs request here, is the

3    benchmark. *Bluetooth*, 654 F.3d at 947; *Staton*, 327 F.3d at 952; *see Rivas v. BG Retail, LLC*,

4    No. 16-cv-06458-BLF, 2020 WL 264401, at *8 (N.D. Cal. Jan. 16, 2020) (approving attorneys'

5    fees totaling 45% of the settlement fund); *Smith v. American Greetings Corp.*, 14-cv-02577-JST,

6    2016 WL 362395, at *8–9 (N.D. Cal. Jan. 29, 2016) (approving attorneys' fees totaling 28% of

7    the settlement fund); *Deaver v. Compass Bank*, No. 13-cv-00222-JSC, 2015 WL 8526982, at

8    *11–12 (N.D. Cal. Dec. 11, 2015) (approving attorneys' fees totaling 33% of the settlement

9    fund); *Moore v. PetSmart, Inc.*, No. 5:12-cv-03577-EJD, 2015 WL 5439000, at *11 (N.D. Cal.

10   Aug. 4, 2015) (approving attorneys' fees totaling 27% of the settlement fund). Courts also often

11   award even award higher percentages in diversity cases relying on state law. *See, e.g., Emmons*

12   *v. Quest Diagnostics Clinical Labs., Inc*., No. 113CV00474DADBAM, 2017 WL 749018, at *7

13   (E.D. Cal. Feb. 27, 2017) (following *Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480, 503 (2016) in

14   awarding 33% of the common fund; "[t]he California Supreme Court recently held that the

15   percentage-of-fund method of calculating attorneys' fees survives in California courts"); *Chavez*

16   *v. Converse, Inc.*, No. 15-CV-03746-NC, 2020 WL 10575028, at *6 (N.D. Cal. Nov. 25, 2020);

17   *Villalpando v. Exel Direct Inc.*, No. 12-cv-04137-JCS, 2016 WL 7740854, *1, *2 (N.D. Cal.

18   Dec. 12, 2016) (awarding 1/3).

19    Here, the degree of success obtained in this settlement also supports approval of a 25%

20   award. *See Camilo*, 2020 WL 1557428, at *17 (net settlement was 44% of defendants' potential

21   liability); *Rivas*, 2020 WL 264401, at *5 (2.4% net recovery to the class was not reason to reject

22   the settlement). "The existence or absence of objectors to the requested attorneys' fee is a factor

23   in determining the appropriate fee award." *Bellinghausen*, 306 F.R.D. at 261 (citation omitted).

24   Here, there is 100% participation by the class members, and no objections. The reasonableness

25   is further bolstered because the class notice provided to class members provided estimated

26   distributions contemplating a 1/3 of the gross settlement being awarded as attorneys' fees.

27   Therefore, the amount class members will receive will actually increase from the notice they

28   received considering the 25% fee request, and lower amount of costs.

-18-

1    Plaintiffs' attorneys heavily and aggressively litigate numerous wage and hour class

2    actions on behalf of workers throughout the State of California – all cases of which are on a

3    contingency fee basis. *See*, *e.g.*, *Rodriguez v. Nike Retail Servs., Inc*., 928 F.3d 810, 818 (9th Cir.

4    2019); *Magadia v. Wal-Mart Assocs., Inc*., 384 F. Supp. 3d 1058 (N.D. Cal. 2019). For example,

5    in *Magadia*, Plaintiff's counsel litigated that case for several years, including trying the case to a

6    successful $102 million judgment on behalf of the class. Walmart successfully appealed and

7    Plaintiff's counsel have not been reimbursed for any attorneys' fees or costs. *See Magadia v.*

8    *Wal-Mart Assocs., Inc.*, 999 F.3d 668 (9th Cir. 2021). As such, employment class actions present

9    significant risks. Nevertheless, Plaintiffs' counsel zealously represent workers notwithstanding

10   the potential for losing cases, or not being reimbursed attorneys' fees and costs for years of

11   tireless litigation.

12       **B.        The Lodestar Calculation "Cross-Check"**

13       Although not required, the Court may also conduct a lodestar analysis to cross-check the

14   reasonableness of the fee award. *In re Google Referrer Header Privacy Litig.*, 869 F.3d 737,

15   748 (9th Cir. 2017) (noting that lodestar analysis not required), *vacated on other grounds by*

16   *Frank v. Gaos*, 139 S. Ct. 1041 (2019). "The lodestar figure is calculated by multiplying the

17   number of hours the prevailing party reasonably expended on the litigation (as supported by

18   adequate documentation) by a reasonable hourly rate for the region and for the experience of the

19   lawyer." *Bluetooth*, 654 F.3d at 941. The Court may increase or decrease the lodestar by a

20   multiplier that reflects factors such as "the quality of representation, the benefit obtained for the

21   class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at

22   942.

23       The declarations of Class Counsel evidence the fact that they devoted approximately

24   304.5 hours of time to this litigation to date. (Fitzpatrick Decl. ¶ 3, Ex. A; Gavron Decl. ¶ 16, Ex.

25   A.) These hours are summarized in the time and task charts that are attached to Plaintiffs'

26   counsel's declarations.

27       In addition, as explained above, Class Counsel expect to expend an additional 10 hours

28   through the final approval hearing, including on matters such as preparing the Motion for Final

-19-

Approval, attending the final approval hearing, and further conferring with class members regarding the case status. (Gavron Decl. ¶ 17.) Thus, Class Counsel will have expended 314.5 hours through final approval.

Applying the various hourly rates of the law firms and lawyers who dedicated their efforts to this matter, a lodestar of $197,407.50 is established for the amount of work spent through final approval. (Fitzpatrick Decl. ¶ 3, Ex. A; Gavron Decl. ¶ 16, Ex. A.) The percentage award sought by Class Counsel, if converted to the lodestar method, would entail a negative multiplier of approximately 0.41. In the Ninth Circuit, positive multipliers "ranging from one to four are frequently awarded…when the lodestar method is applied." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n. 6 (9th Cir. 2002). Thus, the fee application is supported whether by the cross-check lodestar/multiplier method discussed herein, or by the percentage of the common fund discussed in the preceding sections.

### 1.    Plaintiffs' Counsel's Lodestar is Reasonable

The hourly rates employed by Class Counsel, as declared to in the attorney declarations, are reasonable. Plaintiffs' attorneys are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similar litigation. The background and experience of Plaintiffs' counsel are fully set forth in the declarations filed in support of this motion. The basic hourly rates listed for each firm are fair, and representative of the combination of years of experience and the clear successes they have had in the past in connection with class action litigation. The time and task charts summarize the total hours devoted to the matter by the various law firms, along with the hourly rates as set forth in the supporting declarations, and the total billed. (Fitzpatrick Decl. ¶ 3, Ex. A; Gavron Decl. ¶ 16, Ex. A.)

As discussed in their supporting declarations, Class Counsel are a group of well-experienced litigators, including class action litigation. (Fitzpatrick Decl. ¶ 4; Franklin Decl. ¶ 8, 9; Lee Decl. ¶¶ 6-10; Gavron Decl. ¶¶ 9-15.) Under California law, counsel are entitled to compensation for all hours reasonably spent on the matter. *Ketchum vs. Moses*, 24 Cal. 4th 1122, 1133 (2001). Reasonableness of hours is assessed by "the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, litigation tactics, and the trial

1    itself….” *Vo v. Las Virgenes Municipal Water Dist*., 79 Cal. App. 4th 440, 447 (2000). In

2    addition, the attached time and task charts clearly reflect the many hours which were necessarily

3    spent on the case.

4        **C.**    **The Court Should Approve the Request for Reimbursement of Costs**

5        The request for reimbursement of costs, in the amount of $15,845.29 is fair and

6    reasonable. As stated above, the costs are all litigation related costs, which have been detailed in

7    the supporting declaration of Class Counsel. (Fitzpatrick Decl. ¶ 7, Ex. B; Lee Decl. ¶ 11, Ex.

8    A.) The authority for the Court to award costs is the Parties' Settlement Agreement and Labor

9    Code §§ 218.5, 226(e), and 2699(g)(1). The actual costs sought by Plaintiffs' counsel are much

10    less than those originally contemplated by the settlement agreement ($25,000.00).  The

11    difference will revert to the Net Settlement Amount for distribution to the Participating Class

12    Members. Accordingly, the Court should award Plaintiffs' counsel their costs.

13    **VII.    THE ADMINISTRATOR'S COSTS SHOULD BE APPROVED**

14        Here, Phoenix Settlement Administrators dutifully administered the settlement. (*See*

15    *generally* K. Lee Decl.) The Settlement Agreement provides up to $6,250.00 for Phoenix

16    Settlement Administrators' costs. (Settlement Agreement ¶¶ 3, 29.) As such, Plaintiffs

17    respectfully requests that the Court award Phoenix its costs.

18    **VIII.    NOTICE TO THE LWDA**

19        Plaintiffs provided notice of the proposed settlement to the Labor and Workforce

20    Development Agency ("LWDA") in conjunction with filing their Motion for Preliminary

21    Approval, and will do the same with respect to this Motion for Final Approval. Gavron Decl.

22    ¶ 19.

23    **IX.    CONCLUSION**

24        Based on the foregoing, Plaintiffs and Class Counsel respectfully request that this Motion

25    be granted in its entirety and grant Plaintiffs' counsel's fee request of $80,000.00, costs

26    requested in the amount of $15,845.29, and claims administration costs of $6,250.00. The Parties

27    have reached this settlement following extensive litigation, ongoing case discussions, and arm's-

28    length negotiations. Plaintiffs respectfully request that the Court:

*Fuapau v. Lhoist North America of Arizona, Inc.*                NOTICE OF MOTION AND MOTION FOR FINAL
Case No. 20-cv-04404-VKD                                         APPROVAL OF SETTLEMENT

1       1.      Grant final approval of the proposed settlement;

2       2.      Order payment from the settlement proceeds to the Claims Administrator in

3 compliance with the Settlement Agreement;

4       3.      Order payment from the settlement proceeds to Class Counsel in compliance with

5 the Settlement Agreement;

6       4.      Order payment from the settlement proceeds to the LWDA in compliance with the

7 Settlement Agreement;

8       5.      Enter the proposed Final Approval Order and Judgment submitted herewith; and

9       6.      Retain continuing jurisdiction over the implementation, interpretation,

10 administration, and consummation of the settlement.

11

12 Date: August 4, 2022                     FITZPATRICK & SWANSTON

13                                     DIVERSITY LAW GROUP

14

15                       By: _____

16                               B. James Fitzpatrick, Esq.
                                    Larry W. Lee, Esq.

17                               Attorneys for Plaintiffs
                                    SIONE FUAPAU, ALFREDO GODINEZ,

18                               GABRIEL MENDOZA, MANUEL VACA,
                                      MICHAEL NAU, ANTONIO GUZMAN,

19                               JESUS GUERRERO, IVAN PACHECO,
                                        and MIGUEL REYES, JR.

20

21

22

23

24

25

26

27

28