UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SIONE FUAPAU, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>LHOIST NORTH AMERICA OF ARIZONA, INC.,<br><br>            Defendant. | Case No. 20-cv-04404-VKD<br><br>**ORDER RE FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 65 |

In this wage-and-hour class action dispute, plaintiffs Sione Fuapau, Alfredo Godinez, Gabriel Mendoza, Manual Vaca, Michael Nau, Antonio Guzman, Jesus Guerrero, Ivan Pacheco, and Miguel Reyes, Jr. allege that defendant Lhoist North America of Arizona, Inc. ("Lhoist") violated California state labor laws. On May 11, 2022, the Court issued orders granting plaintiffs' motion for preliminary approval of the parties' class action settlement and conditionally certifying the class. Dkt. Nos. 63, 64. Now before the Court is plaintiffs' motion for final approval of a class action settlement and award of attorneys' fees and costs. Dkt. No. 65. Defendant does not oppose the motion. The Court held a fairness hearing regarding final approval and fees on September 13, 2022. Dkt. No. 67.

Having considered the arguments of counsel and the papers submitted, the Court grants final approval of the settlement agreement and grants the requested attorneys' fees and costs as set forth below.[1]

---

[1] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. Dkt. Nos. 11, 12; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. The consent of absent class members is not required for this Court to exercise jurisdiction over this matter. *Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1076 (9th Cir. 2017).

## I. BACKGROUND

Plaintiffs, who are all residents of Monterey County, California, are present and former non-exempt employees of defendant Lhoist. Dkt. No. 43 ¶¶ 1–9. Lhoist is an Arizona corporation that operates a mineral products business with its headquarters in Fort Worth, Texas. Dkt. No. 1 ¶ 18; Dkt. No. 1-2 ¶¶ 4–5; Dkt. No. 43 ¶ 18; Dkt. No. 45 ¶ 18. Lhoist employs or employed plaintiffs at Lhoist's "Natividad Plant" in Salinas, California. Dkt. No. 43 ¶ 22; Dkt. No. 45 ¶ 22. The Natividad Plant is a mineral mining and quarrying operation that runs continuous machinery 24 hours a day, six to seven days a week. Dkt. No. 43 ¶ 22.

Plaintiffs allege that during their employment, Lhoist intentionally failed to pay its employees the full wages owed for overtime hours worked, nondiscretionary safety bonuses earned, and contractually promised shift premiums. *Id.* ¶ 32. They say that Lhoist regularly required employees to work, without overtime pay, more than eight hours in a single workday and more than 40 hours in a workweek. *Id.* ¶ 36. Plaintiffs further allege that employees never received off-duty meal periods, even though Lhoist automatically deducted 30 minutes of pay per day from each employee to account for meal periods. *Id.* Specifically, plaintiffs allege that Lhoist maintained and enforced a uniform policy of requiring its employees to work shifts of five hours or more within a single workday without a 30-minute uninterrupted duty-free meal period, and that Lhoist did not compensate employees for each meal period not provided. *Id.* ¶ 34. Plaintiffs also allege that Lhoist maintained and enforced a uniform policy of failing to provide its employees with paid duty-free rest periods of at least 10 consecutive uninterrupted minutes for every four hours worked, and that Lhoist failed to compensate them for each rest period not provided. *Id.* ¶ 35. Plaintiffs further allege that Lhoist regularly failed to provide complete and accurate itemized wage statements, to record all deductions from wages, or to keep accurate information with respect to each employee. *Id.* ¶ 37. Finally, plaintiffs allege that Lhoist maintained and enforced a uniform policy requiring its employees to use their personal cell phones to communicate with Lhoist during non-working hours, and that Lhoist failed to reimburse such work-related expenses. *Id.* ¶ 39.

On February 26, 2021, the parties participated in a private mediation session. Dkt. No. 37

at 2. The matter did not resolve and the parties continued to conduct discovery. *Id.* On June 7, 2021, plaintiffs filed a motion to certify a class with respect to their claim for failure to comply with itemized employee wage statement requirements, which Lhoist opposed. Dkt. Nos. 26, 31, 33. On September 1, 2021, three weeks before the hearing on plaintiffs' motion to certify the class, the parties participated in a second mediation session. Dkt. No. 37 at 2. Although the matter did not immediately resolve, the parties eventually accepted the mediator's proposal. *Id.*

The terms of the settlement agreement are memorialized in the parties' Joint Stipulation of Class and Representative Action Settlement ("the Settlement Agreement"). Dkt. No. 51-1, Ex. A. As contemplated by the settlement agreement, plaintiffs filed a second amended complaint on October 20, 2021. Dkt. No. 51-1, Ex. A ¶¶ 18, 23. The operative complaint asserts 11 claims under California state law. *See* Dkt. No. 43.

The Court initially denied plaintiffs' unopposed motion for preliminary approval of the settlement, citing several concerns. Dkt. No. 56. After plaintiffs provided supplemental briefing, Dkt. No. 59, the Court conditionally certified a class action under Rule 23 of the Federal Rules of Civil Procedure, designated the named plaintiffs as class representatives and appointed plaintiffs' counsel as class counsel. Dkt. Nos. 63, 64.

In sum, the parties have agreed to a non-reversionary settlement that includes a release of claims in return for Lhoist's payment of $320,000 ("the gross settlement amount"). The settlement amount will be paid into a common fund, to be distributed as follows: (1) attorneys' fees and costs awarded to class counsel, not to exceed $80,000 for fees and $25,000 for costs;[2] (2) claims administration costs, estimated to be $6,250; (3) a payment to resolve any and all claims of class members and the State of California arising under PAGA, 75% of which shall be paid to the LWDA, and 25% of which shall be distributed to the class members; and (4) the remaining sum ("the net settlement amount") to each class member based on how long he or she worked for Lhoist during the Class Period. The entire net settlement amount will be distributed to class members who do not exclude themselves from the settlement. Dkt. No. 65 at 11. In the event that

---

[2] Plaintiffs state that actual costs are $15,845.29. Dkt. No. 65 at 21.

settlement checks go uncashed, any funds remaining shall be given as a cy pres award to Watsonville Law Center, in Watsonville, California. *Id.*

Plaintiffs now move for final approval of the settlement and an award of attorneys' fees and costs. Dkt. No. 65. Plaintiffs inform the Court that the total number of settlement class members is 116, with no objections and no opt-outs—a 100% participation rate. *Id.* at 7, 16. Likewise, the Court has not received any objections, and no one appeared at the September 13, 2022 final fairness hearing to state any objection to the proposed settlement.[3]

## II. LEGAL STANDARD

Court approval is required for the settlement of Rule 23 class actions. *See* Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."). The Ninth Circuit has repeatedly noted that a strong judicial policy favors settlement of class actions. *Briseño v. Henderson*, 998 F.3d 1014, 1031 (9th Cir. 2021) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)). However, no broad presumption of fairness applies to such settlements. *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019). And where the parties reach a settlement before class certification, courts must "employ[] extra caution and more rigorous scrutiny," *id.*, and "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement," *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ("Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.").

In the first stage of the process, the Court preliminarily approves the settlement pending a

---

[3] Plaintiffs note that they were contacted by a person purporting to be the spouse of a deceased class member asking that the deceased class member be excluded from the class. Dkt. No. 65 at 9-10. However, the spouse provided no documentation showing that the spouse was the executor of the estate or that the spouse had power of attorney in response to the claims administrator's request for documentation. In these circumstances, the Court does not consider the class member to have objected to or opted out of the settlement.

1  final fairness hearing, temporarily certifies a settlement class, and authorizes notice to the class.
2  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 252 (N.D. Cal. 2015) (citation omitted).  In
3  the second stage, at the final fairness hearing, and after notice has been given to the putative class
4  members, the Court hears any objections to the treatment of the litigation as a class action or to the
5  settlement terms.  *Id.* (citing *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. 2014)).  The
6  Court then determines whether the parties may settle the class action pursuant to the agreed-upon
7  terms.  *Id.*

**III.  DISCUSSION**

    **A.  Motion for Final Approval of Class Action Settlement**

First, the Court assesses whether a class exists pursuant to Rule 23 of the Federal Rules of Civil Procedure.  *Staton*, 327 F.3d at 952.  Second, the Court assesses whether the proposed settlement is "fundamentally fair, adequate, and reasonable," considering "the settlement taken as a whole, rather than the individual component parts, that must be examined."  *Id.* (internal quotations and citation omitted).

    **1.  Final Class Certification of the Settlement Class**

Class certification under Rule 23 requires two steps.  First, plaintiffs must satisfy the four prerequisites under Rule 23(a), namely numerosity, commonality, typicality, and adequacy of representation.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011).  Additionally, plaintiffs must show that at least one of the bases for Rule 23(b) is met.  *Amchem. Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Here, plaintiffs seek certification under Rule 23(b)(3) and therefore must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

In its prior orders regarding preliminary approval of the settlement, the Court found that the putative class satisfied Rule 23(a)'s numerosity, commonality, typicality, and adequacy of representation requirements, as well as Rule 23(b)(3)'s predominance and superiority requirements.  Dkt. Nos. 56, 63.  Plaintiffs' present motion for final approval does not indicate that there have been any changes or developments that would require the Court to alter its prior

analysis or conclusions. Accordingly, the Court concludes that the Rule 23 requirements for class certification have been met and approves for final certification a Rule 23 class of: all current and former non-exempt employees of defendant who worked in the State of California at any time during the class period (October 20, 2017 through November 15, 2021). Plaintiffs represent that there are 116 putative class members. Dkt. No. 65 at 7, 16.

### 2. Rule 23(c)(2) Notice Requirements

If the Court certifies a class under Rule 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The rule governs both the form and content of a proposed notice and requires that the notice "clearly and concisely" state "the nature of the action," the "definition of the class certified," the "class claims, issues, or defenses," information about appearing and opting out, and "the binding effect of a class judgment on members." *Id.* The Ninth Circuit has held "that neither due process nor Rule 23's standard necessarily require actual notice," *SFBSC Mgmt.*, 944 F.3d at 1046 n.7, and parties are not required to implement all potential options in every case, *id.* at 1047. The notice "requirement is designed to ensure that class notice procedures comply with the demands of due process" and essentially means that the method of providing notice "must be such as [a person] desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 1045–46 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950)).

In the present case, the settlement administrator mailed notices to each class member at his or her address utilizing data provided by Lhoist; the administrator updated the list of addresses by processing it through the National Change of Address database maintained by the United States Postal Service. Dkt. No. 56. The notice itself clearly advised class members of their options: class members may (1) participate in the settlement, which does not require any further action; (2) object to the settlement; or (3) exclude themselves from the settlement. Dkt. No. 51-1; *see Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" (citation omitted)). As the Court

previously found, the notice adequately explained what it means for a class member who does not opt out to be bound by a class-wide judgment. Dkt. No. 51-1 at 3-5; Dkt. No. 63.

Of the 116 mailed notices, all 116 were successfully delivered—none were returned with an invalid address or as otherwise undeliverable. Dkt. No. 65.

The Court is satisfied that this method of providing notice was reasonably calculated to provide notice to class members and was the best form of notice available under the circumstances. *Cf. SBCSC Mgmt.*, 944 F.3d at 1042, 1046 n.7 (observing that a response rate of 18.5% of the class "seem[ed] low for a scenario in which class members stood to receive hundreds of dollars if they made a claim," and was an indication that class members may not have received adequate notice of the settlement).

### 3. Approval of the Settlement

Rule 23(e) requires district courts to approve a class action settlement "only on finding that it is fair, reasonable, and adequate" after considering these factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>   i. The costs, risks, and delay of trial and appeal;
>   ii. The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   iii. The terms of any proposed award of attorney's fees, including timing of payment; and
>   iv. Any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). This list of factors is not intended to displace any factors currently considered by courts, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) advisory committee note to 2018 amendment.

In the Ninth Circuit, "a district court examining whether a proposed settlement comports with Rule 23(e)(2) is guided by the eight '*Churchill* factors.'" *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (citations omitted). These *Churchill* factors include:

> (1) The strength of the plaintiff's case; (2) the risk, expense,

> complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2009) (citing *Churchill Vill.*, 361 F.3d at 576–77)). "Only when the district court explores these factors comprehensively can the settlement award survive appellate review." *Kim*, 8 F.4th at 1178 (citation and internal quotation marks omitted).

However, "consideration of these eight *Churchill* factors alone is not enough to survive appellate review." *Id.* at 1179 (citation omitted). The Ninth Circuit recently held that Rule 23(e)(2), as revised in 2018, requires courts "to go beyond our precedent" by accounting for the terms of any proposed award of attorneys' fees when determining whether the relief provided for the class is adequate. *Briseño*, 998 F.3d at 1023–26; *see also Kim*, 8 F.4th at 1179. Specifically, in reviewing settlements struck both before and after class certification, "district courts must apply *Bluetooth*'s heightened scrutiny" to examine whether the attorneys' fee arrangement shortchanges the class. *Id.* at 1023–25. The *Bluetooth* court identified three signs of such shortchanging:

> (1) class counsel's receipt of a disproportionate distribution of the settlement;
> (2) a "clear sailing" agreement "providing for the payment of attorneys' fees separate and apart from class funds"; and
> (3) an arrangement whereby fees awarded are reverted to the defendants, rather than added to the class fund.

654 F.3d at 947.

Accordingly, as relevant to this case, the Court considers the following factors: (1) strength of the plaintiffs' case and risks of further litigation; (2) amount of the settlement; (3) the extent of discovery completed and the stage of the proceedings; (4) reaction of the class members; (5) proposed attorneys' fee award and absence of collusion; and (6) the experience and views of class counsel.

### a. Strength of plaintiffs' case and risks of further litigation

As discussed in the Court's prior orders (Dkt. Nos. 56, 63), plaintiffs assert that they face substantial risks in proceeding with the litigation. For example, Lhoist contended that some

8

putative class members had signed waivers that would preclude recovery on plaintiffs' meal and rest period claims. *See* Dkt. No. 59 at 10. And with respect to "waiting time penalties," plaintiffs would have needed to prove that Lhoist's failure to pay wages was "willful." *Id.* at 10–11, 12–14.

"In light of the risks and costs of continued litigation, the immediate rewards to class members are preferable." *Bellinghausen*, 306 F.R.D. at 255 (finding immediate payout to class outweighed the risks and costs of further litigation, where each class member was offered a pro rata share of the settlement and the average amount of recovery was "just north of $454.48"). Here, each class member will receive a pro rata share of the net settlement based on how long he or she worked for Lhoist during the Class Period, and the average recovery is estimated as $1,706.08. Dkt. No. 65 at 11. The settlement administrator must make disbursements to the entire class within 21 days after the effective date of the settlement. Dkt. No. 51-1, Ex. A ¶ 49. Although the class members (or some of them) arguably might have received more if they had proceeded to trial and prevailed on the merits of their case, they also faced a risk that the resulting recovery would be smaller than what is currently expected. Further, the benefit of receiving an award in the immediate future has its own value. *Bellinghausen*, 306 F.R.D. at 255.

For these reasons, these factors weigh in favor of approving the settlement.

### b. Amount of the settlement

When considering the fairness and adequacy of the amount offered in settlement, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Id.* at 256 (citation omitted). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal citation and quotation marks omitted).

In the present case, the $320,000 gross settlement amount is approximately 11.65% of defendant's estimated maximum potential liability at trial, assuming all class members were able to obtain a recovery. Dkt. No. 56 at 17-18. The $217,904.71 net settlement amount is approximately 8% of defendant's estimated maximum potential liability. Viewing the settlement as a whole, including the significant difficulties plaintiffs would face in establishing liability, the

Court finds that the amount offered in the settlement is fair. *See, e.g.*, *Uschold v. NSMG Shared Servs.*, 2020 WL 3035776, at *29 (N.D. Cal. 2020) (approving settlement where net settlement amount reflected a 12% recovery of potential damages); *Bellinghausen*, 306 F.R.D. at 256 (approving wage-and-hour class action settlement where gross settlement amount was between 11% and 27% of plaintiffs' potential recovery).

Thus, the amount offered in settlement also weighs in favor of final approval.

### c. Extent of discovery completed and the stage of the proceedings

As discussed in the Court's previous order (Dkt. No. 56), plaintiffs represent that they conducted substantial discovery in support of their claims, their motion for class certification, and their positions in mediation. Dkt. No. 51-1 ¶ 6. Plaintiffs also say that they analyzed Lhoist's production of documents, which included payroll policies and procedures, wage statements, and a sampling of time and payroll records, to produce an exposure analysis. Dkt. No. 51 at 22–23; Dkt. No. 51-1 ¶¶ 6, 8. The parties participated in two mediation sessions with a respected mediator. Dkt. No. 51 at 11; Dkt. No. 51-1 ¶¶ 11–13. These efforts suggest that the parties did indeed conduct a careful investigation of plaintiffs' claims before reaching a resolution. *See Bellinghausen v. Tractor Supply Company*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) (citing *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014)).

This factor, too, weighs in favor of final approval.

### d. Reaction of class members

Plaintiffs report that there were no objections to the settlement and no members chose to exclude themselves from the settlement. Dkt. No. 65 at 7. The Court has not received any objections to date, nor did any objector appear at the final fairness hearing. This factor thus weighs in favor of approving the settlement. *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (holding that district court had discretion to find a favorable reaction to settlement where only 54 class members submitted objections, out of the 376,301 who had been sent notices); *Bellinghausen*, 306 F.R.D. at 258 ("Courts have repeatedly recognized that an absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the proposed class settlement action are favorable to the class

members.") (citation and internal quotation marks omitted).

### e. Proposed attorneys' fee award and absence of collusion

Finally, the Court must account for the terms of the proposed attorneys' fee award when determining whether the relief provided for the class is adequate. *Briseño,* 998 F.3d at 1023–26; *Kim,* 8 F.4th at 1179. Specifically, the Court must examine the attorneys' fee arrangement for the three signs of collusion identified by the Ninth Circuit in *Bluetooth* and described above. *Briseño,* 998 F.3d at 1023–25 (citing *Bluetooth*, 654 F.3d at 947).

First, the Court compares the *actual* payout to the class to the amount of attorneys' fees requested. *See Bellinghausen*, 306 F.R.D. at 258–59 (applying the *Bluetooth* factors). After making the deductions for attorneys' fees and costs, the total potential actual payout to the class is $217,904.71. Plaintiffs' request of $80,000 in attorneys' fees is thus 36.7% of the total potential actual payout to the class. The amount is not unreasonable in the circumstances. *See Camilo v. Ozuna*, 18-cv-02842-VKD, 2020 WL 1557423, at *21–22 (N.D. Cal. Apr. 1, 2020) (court "not prepared to say" that class counsel's request in fees, about 52% of the actual total payout to class, was a sign of collusion); *Bellinghausen*, 306 F.R.D. at 258–59 (where amount of attorneys' fees requested was 38.5% of total actual payout to class, such request was "reasonable").

The remaining two warning signs—a "clear sailing" provision and an arrangement for fees not awarded to the class to revert to the defendants—are not present here. Although the parties agreed that a request for attorneys' fees would not exceed one-third of the gross settlement amount, plaintiffs only requested 25%, or $80,000. Moreover, no agreement provides for the payment of attorneys' fees separate and apart from the class funds. Finally, no provision allows for the reversion of unpaid funds to Lhoist.

For these reasons, the Court is satisfied that the settlement was not the result of collusion between the parties. Because this and the preceding fairness factors suggest that the settlement is fair, adequate and reasonable, final approval of the settlement is appropriate.

### f. The experience and views of counsel

The experience and views of counsel also weigh in favor of approving the settlement. Class counsel state that they are "a group of well-experienced litigators, including [in] class action

litigation." Dkt. No. 65 at 20. In its prior order, the Court found that class counsel met the adequacy requirement. Dkt. Nos. 56, 63. Class counsel opine that the proposed settlement is fair and reasonable, and that final approval of the settlement would best serve the interests of the class. Dkt. No. 65 at 15-16. "The court gives considerable weight to class counsel's opinions regarding the settlement due to counsel's experience and familiarity with the litigation." *Uschold*, 2020 WL 3035776, at *32–33 (N.D. Cal. 2020) (finding counsel's assertion that the settlement was fair, adequate, and reasonable supported final approval of the settlement, where counsel had extensive experience litigating wage-and-hour class actions); *Ontiveros*, 303 F.R.D. at 371 (same).

This factor weighs in favor of final approval.

### B. Motion for Attorneys' Fees and Costs

Next, the Court determines whether the requested attorneys' fees and costs are fair and reasonable.

#### 1. Attorneys' Fees

"The Ninth Circuit has approved two methods of determining attorneys' fees in cases where, as here, the amount of the attorneys' fee award is taken from the common fund set aside for the entire settlement: the 'percentage of the fund' method and the 'lodestar' method." *Bellinghausen*, 306 F.R.D. at 259–60 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)). "The district court retains discretion in common fund cases to choose either method," *id.*, but the Ninth Circuit recommends that district courts apply one method, using the other to cross-check the appropriateness of the amount of requested attorneys' fees. *See Bluetooth*, 654 F.3d at 944. "Under either approach, '[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion.'" *Bellinghausen*, 306 F.R.D. at 260 (quoting *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002)).

Because this case involves a common settlement fund with an easily quantifiable benefit to the class, the Court will rely principally on the benchmark "percentage of the fund" method. *See Kim*, 8 F.4th at 1181 ("The percentage-of-recovery approach may be used where defendants provide monetary compensation to the plaintiffs and class benefit is easy to quantify") (citation

and internal quotation marks omitted); *see also Bluetooth*, 654 F.3d at 942 (percentage method is particularly appropriate in common fund cases, where "benefit to the class is easily quantifiable"). "Under this method, the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." *Kim*, 8 F.4th at 1181 (citation and internal quotation marks omitted). Because "[i]njunctive relief is inherently difficult to monetize," a district court should generally avoid valuing it altogether when determining proportional attorneys' fees. *Id.*

The Court will also apply a lodestar cross-check to ensure the award's reasonableness. *Bellinghausen*, 306 F.R.D. at 260 (citing *Vizcaino*, 290 F.3d at 1047).

### a. Reasonableness of the percentage

The Ninth Circuit has consistently approved a "benchmark" award of 25% of the common fund. *Bluetooth*, 654 F.3d at 947; *Staton*, 327 F.3d at 952. Here, class counsel's request for fees of $80,000 is 25% of the gross settlement amount. In this district, other judges reviewing wage-and-hour class action settlements typically have approved attorneys' fee awards over the 25% benchmark only in cases involving more protracted and complex litigation than in this case. *See Rivas v. BG Retail, LLC*, No. 16-cv-06458-BLF, 2020 WL 264401, at *8 (N.D. Cal. Jan. 16, 2020) (approving attorneys' fees totaling 45% of the settlement fund); *Smith v. American Greetings Corp.*, 14-cv-02577-JST, 2016 WL 362395, at *8–9 (N.D. Cal. Jan. 29, 2016) (approving attorneys' fees totaling 28% of the settlement fund); *Deaver v. Compass Bank*, No. 13-cv-00222-JSC, 2015 WL 8526982, at *11–12 (N.D. Cal. Dec. 11, 2015) (approving attorneys' fees totaling 33% of the settlement fund); *Moore v. PetSmart, Inc.*, No. 5:12-cv-03577-EJD, 2015 WL 5439000, at *11 (N.D. Cal. Aug. 4, 2015) (approving attorneys' fees totaling 27% of the settlement fund).

"The most critical factor in determining appropriate attorneys' fee awards is the degree of success obtained." *Smith*, 2016 WL 362395, at *8 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). Here, the results obtained support a 25% award of attorneys' fees. Although the net settlement is 8% of Lhoist's estimated maximum total liability, plaintiffs faced a significant risk that they would be unable to establish liability. *See Camilo*, 2020 WL 1557428, at *17 (net settlement was 44% of defendants' potential liability); *Rivas*, 2020 WL 264401, at *5 (2.4% net

recovery to the class was not reason to reject the settlement). Given the risks of further litigation, the class has achieved a high degree of success.

Additionally, "[t]he existence or absence of objectors to the requested attorneys' fee is a factor in determining the appropriate fee award." *Bellinghausen*, 306 F.R.D. at 261 (citation omitted). Here, Plaintiffs report that 100% of the class received notice of their right to object to the attorney fee award set forth in the settlement agreement, but not one class member objected. "[T]he lack of objection from any class member supports the attorneys' fee award." *Smith*, 2016 WL 362395, at *9.

In these circumstances, class counsel's request for an attorneys' fee award in the amount of 25% of the common fund—i.e., $320,000—appears to be reasonable.

### b.      Lodestar cross-check

The Court now compares the amount of the 25% award requested to the lodestar calculation of fees reasonably incurred. Although this "extra step" is "not required," *In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 748 (9th Cir. 2017), *vacated on other grounds by Frank v. Gaos*, 139 S. Ct. 1041 (2019), the lodestar "provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. The Court may increase or decrease the lodestar by a multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 942.

The Court will first determine whether the hourly fee rate provided by counsel is reasonable and then will address whether the number of hours billed was reasonably expended.

### i.      Reasonable rate

"In determining the reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir.1986), *amended on other grounds by* 808 F.2d 1373 (9th Cir. 1987). The relevant community

1  for the purposes of determining the prevailing market rate is generally the "forum in which the
2  district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).
3  "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the
4  community, and rate determinations in other cases, particularly those setting a rate for the
5  plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers*
6  *of America v. Phelps Dodge Co.*, 896 F.2d 403, 407 (9th Cir. 1990). The Court is required to
7  consider cases that were decided relatively contemporaneously to the time the work was
8  performed. *See Camacho*, 523 F.3d at 981.

9  Here, class counsel request fees based on the hourly rates of three attorneys: B. James
10 Fitzpatrick ($750/hour), who has over 30 years of experience, most of which have been spent
11 litigating employment disputes; Laura Franklin ($750/hour), who has 10 years of experience, all of
12 which has been spent litigating employment disputes; and Max Gavron ($600/hour), who has 9
13 years of experience in complex litigation. Dkt. No. 65-1 ¶ 4; Dkt. No. 65-4 ¶¶ 9-15. Class
14 counsel have not supported their requested rates with affidavits from other attorneys in the
15 relevant community. However, the Court's own review reveals that other judges in this district
16 have determined that rates of up to $800 are appropriate in wage-and-hour class actions for
17 lawyers with similar experience. *See Rivas*, 2020 WL 264401, at *7 (hourly rate of $725
18 reasonable for attorney with 25 years of experience); *Greko v. Diesel U.S.A., Inc.*, No. 10-cv-
19 02576 NC, 2013 WL 1789602, at *10–11 (N.D. Cal. Apr. 26, 2013) (eight years ago, approving
20 hourly rate of $700 for attorney with 26 years of experience). Moreover, in 2020, another judge in
21 this district approved Mr. Fitzpatrick's requested rate of $750/hour in a matter similar to the
22 instant case. *See Mendoza v. National Vision, Inc.*, No. 19-CV-01485-SVK (N.D. Cal. Oct. 20,
23 2020).

24 Based on the fees regularly awarded in comparable actions in this district, and the fact that
25 these attorneys are experienced litigators in wage-and-hour class actions, the Court concludes that
26 each attorney's requested rate is reasonable.

27         **ii.**    **Reasonable hours**

28 In calculating hours reasonably expended, the Court should exclude hours that are

"excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433–34.

Over the two and a half years of this litigation, class counsel have billed a total of approximately 314.5 hours. The parties have engaged in significant discovery and mediation since this action commenced, and class counsel have summarized their time in task charts. Dkt. No. 65-1, Ex. A; Dkt. No. 65-4, Ex. A.

The hours billed were relatively evenly split between the two class counsel firms. Attorneys for firm Fitzpatrick & Swanston expended a total of 131.5 hours as of August 4, 2022. Dkt. No. 65-1, Ex. A. Mr. Gavron, for firm Diversity Law Group, P.C., expended a total of 173 hours as of the same date. Dkt. No. 65-4, Ex. A. He also expects to spend an additional 10 hours on this matter until the settlement is finally administered. *Id.*

In this case, the Court finds that the hours expended by class counsel are reasonable given the length of the lawsuit and the accounting of hours provided by the attorneys. The time spent does not appear to be unnecessary, duplicative, or excessive.

### c. Lodestar calculation

Given class counsel's reasonable hourly rates and reasonable hours expended, the total lodestar calculation for class counsel is $197,407.50. The $80,000 fee award requested is less than half the amount counsel incurred. This supports the Court's assessment that the requested attorneys' fees are reasonable. The Court will award class counsel $80,000 to be paid from the common fund.

### 2. Costs

Because "an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund . . . courts throughout the Ninth Circuit regularly award litigation costs and expenses—including reasonable travel expenses—in wage-and-hour class actions." *Bellinghausen*, 306 F.R.D. at 265 (citation omitted). The settlement agreement contemplates litigation costs of up to $25,000, to compensate class counsel for work already performed in this case and all work remaining to be performed. However, in total, class counsel request costs of only $15,845.29. Dkt. No. 65 at 21. According to class counsel, these costs are all necessary litigation-related costs. Dkt. No. 65-1 ¶ 7.

1    The Court concludes that these are reasonable litigation expenses incurred for the benefit
2    of the class and therefore grants class counsel's request for $15,845.29 in costs.

## IV. CONCLUSION

For the reasons described above, the Court grants plaintiffs' motion for final approval of the settlement. The Court also grants plaintiffs' motion for attorneys' fees and costs. Specifically, the Court awards the following costs: $80,000 in attorneys' fees and $15,845.29 in litigation costs.

The Court further orders as follows:

1. The Court, for purposes of this Order Granting Final Approval of Class and Representative Action Settlement and Judgment, adopts all terms as set forth in the Settlement Agreement.

2. The Court has jurisdiction over the subject matter of this Action, Defendant, and the Class Members.

3. The Court has determined that the Notice Packet given to the Class Members fully and accurately informed all Class Members of all material elements of the proposed settlement — including the plan of distribution of Class Settlement Amount, the PAGA Payment, and the application for Class Counsel Award — constituted the best notice practicable under the circumstances, constituted valid, due, and sufficient notice to all Class Members, and complied fully with Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable laws.

4. The Court hereby grants final approval of the settlement as fair, reasonable, and adequate in all respects to the Participating Class Members pursuant to Rule 23 of the Federal Rules of Civil Procedure, and orders the Parties and the Claims Administrator to implement all remaining terms of the Settlement Agreement pertaining to the distribution of the Class Settlement Amount and Net Settlement Amount in accordance with the terms of the Settlement Agreement.

5. The Court also finds the settlement of the PAGA claims to be fair, reasonable, and adequate in view of PAGA's purposes to remediate labor law violations, deter

future ones, and to maximize enforcement of state labor laws.

6. The plan of distribution as set forth in the Settlement Agreement providing for the distribution of the Net Settlement Amount to Participating Class Members is hereby finally approved as being fair, reasonable, and adequate pursuant to Rule 23 of the Federal Rules of Civil Procedure.

7. As previously held in the Court's Preliminary Approval Order, the Class for settlement purposes is appropriate under Fed. R. Civ. P. 23 and related case law and is defined as follows:

> All current and former non-exempt employees of Defendant who worked in the State of California at any time during the Class Period (October 20, 2017, through November 15, 2021).

8. Zero (0) individuals requested exclusion from the Class.

9. As previously held in the Court's Preliminary Approval Order, the Court appoints as Class Counsel, Fitzpatrick & Swanston and Diversity Law Group, P.C.

10. The Court approves the payment of attorneys' fees in the amount of $80,000.00 to Class Counsel, which shall be paid from, and not in addition to, the Class Settlement Amount.

11. The Court also approves the additional payment of attorneys' costs in the amount of $15,845.29 to Class Counsel to reimburse them for their expenses, which shall be paid from, and not in addition to, the Class Settlement Amount.

12. The Court approves a payment of $6,250.00 to the Claims Administrator out of the Class Settlement Amount.

13. Any checks for Individual Settlement Payments that are not cashed within 180 days shall be transmitted to Watsonville Law Center, as a cy pres beneficiary.  <u>However, no distribution to the cy pres beneficiary shall be made until the Court has approved plaintiffs' post-distribution accounting.</u>

14. Within 21 days after the distribution of the settlement funds and payment of

1  attorneys' fees, <u>but no later than 210 days from the date of this order</u>, Plaintiffs

2  shall file a Post-Distribution Accounting from the Claims Administrator, as set

3  forth in the Northern District of California's Procedural Guidance for Class Action

4  Settlements (<u>and as modified by #13 above</u>).

15. Upon entry of this Order and the accompanying Judgment, the claims in this Action and the Released Claims of each Participating Class Member against Defendant, and against any and all of the Released Parties (Defendant, and any of its former and present parents, subsidiaries, affiliates, divisions, corporations in common control, predecessors, successors, and assigns, as well as all past and present officers, directors, employees, partners, shareholders and agents, attorneys, insurers, and any other successors, assigns, or legal representatives), are fully, finally, and forever released, relinquished and discharged pursuant to the terms of the Settlement Agreement to the maximum extent permitted by law. The Released Claims are defined as follows:

> "[A]ny and all claims, rights, demands, liabilities, and causes of action based on the same set of operative facts as those set forth in the operative Second Amended Complaint, including but not limited to claims based on the following categories of allegations: All claims for violation of Labor Code §§ 201, 202, 203, 204, 216, 218, 218.5, 218.6, 221, 223, 226, 226.3, 226.7, 510, 512, 558, 1174, 1175, 1194, 1198, 1199, 2800, and 2802, and Business and Professions Code § 17200, et seq., and all applicable IWC Wage Orders for failure to provide proper meal and rest breaks and/or pay meal and rest period premiums at the regular rate of pay, pay all overtime wages owed, pay all agreed wages and minimum wage, furnish accurate wage statements, reimburse business expenses, pay all wages in a timely manner and upon separation of employment, and unfair business practices."

16. In addition, upon entry of this Order and the accompanying Judgment, Class Members and the State of California (including the Labor Workforce Development Agency) fully, finally, and forever release, settlement compromise, and discharge the Released Parties of and from any and all claims under PAGA based on the

19

1          operative facts set forth in the operative Second Amended Complaint, including but
2          not limited to alleged violations of Labor Code sections 201, 202, 203, 204, 216,
3          218, 218.5, 218.6, 223, 226, 226.3, 226.7, 227.3, 246, 510, 512, 558, 1174, 1175,
4          1194, 1197, 1197.1, 1198, 1199, 2699, 2800, 2802, that accrued during the Class
5          Period, as provided in the Settlement Agreement.

6.  17.    Each Participating Class Member is bound by this Order and the Judgment, including, without limitation, the release of claims as set forth in the Settlement Agreement.

9.  18.    This Order, the Judgment, the Settlement Agreement, and all papers related thereto, are not, and shall not be construed to be, an admission by Defendant of any liability, claim or wrongdoing whatsoever, and shall not be offered as evidence of any such liability, claim or wrongdoing in this Action or in any other proceeding.

13. 19.    Without affecting the finality of this Order and Judgment, the Court reserves exclusive and continuing jurisdiction over the Action, the Plaintiffs, the Participating Class Members, and Defendant for the purposes of supervising the implementation, enforcement, construction, and interpretation of the Settlement Agreement, Preliminary Approval Order, distribution of the Class Settlement Amount.

**IT IS SO ORDERED.**

Dated: September 23, 2022

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge